## SARAH J. WYNNE ET AL. V. O. G. PARKE.

### No. 393.—Decided March 26, 1896.

**1. Power of Attorney.**

When an agent derives his authority from a written instrument that authority will be limited to the plain import of the language by which it is conferred and the intent of the parties ascertained from the language used. But the entire instrument may evidence an intent showing some of the words to have been used in a common though inaccurate sense, and require a construction giving effect to such intent. (P. 417.)

**2. Same—Instrument Construed.**

A widow with one of her children executed a writing empowering an agent to "hunt up, develop, establish and dispose of all lands and land claims belonging to the estate of Robert H. Wynne, deceased (her husband) of which we are lawful heirs:" sale under such power conveyed the community rights of the widow as well as the inherited interest of the daughter. The general intent evidenced by the instrument was not required to be limited by giving the words "of which we are lawful heirs" their correct meaning, it being common to speak of a widow as an "heir." (P. 418.)

ERROR to Court of Civil Appeals for Third District in an appeal from Hayes County.

The suit was brought by Sarah J. Wynne et al. against Parke, to recover land which plaintiffs claimed as heirs of Amanda J. Wynne, and defendant claimed under a deed made by her agent by virtue of the power

of attorney construed in this opinion. The trial court gave judgment for defendant, and on plaintiff's appeal this was reversed and rendered for appellants, whereupon appellee obtained writ of error.

*Thos. H. Franklin* and *W. O. Hutcheson*, for plaintiff in error.—The trial court did not err in holding that the power of attorney from Sarah J. Wynne and Amanda J. Wynne authorized sale of whatever interest they had in the land in controversy, and that the deed from their attorney by his substitute, passed such title and that all after acquired title to said premises passed by said deed, the same being a warranty. Michon v. Ayalla, 84 Texas, 690.

*Will G. Barber*, for defendant in error.—The wife's interest in community property is equal to that of the husband; after his death it is no part of his estate and she does not hold it as his heir. Thompson v. Cragg, 24 Texas, 592; Veramendi v. Hutchins, 48 Texas, 531; Van Sickle v. Catlett, 75 Texas, 409; Grigsby v. May, 84 Texas, 251; Rudd v. Johnson, 60 Texas, 93; Carruth v. Grigsby, 57 Texas, 265.

Powers of attorney must be strictly construed, and must be held to include only such powers as are expressly given, "and those which are necessary, essential and proper to carry out those expressly given." Skaggs v. Murchison, 63 Texas, 353; Frost v. Cattle Co., 81 Texas, 509; Gouldy v. Metcalf, 75 Texas, 458; Collins v. Durward (Texas), 23 S. W. Rep., 561; Smith v. Powell (Texas), id., 1111; Mechem's Agency, sec. 308; Ewell's Evans on Agency, 204-5; 1 Devlin on Deeds, sec. 358; Story on Agency, secs. 68-71; Gilbert v. How, 45 Minn., 121; Brantly v. Ins. Co., 53 Ala., 554; Craighead v. Peterson, 72 N. Y., 279; Bissell v. Terry, 69 Ill., 184.

Where in a power of attorney "authority is given to perform specific acts, and general terms are also employed, the latter are limited to the particular acts authorized by the power." Harrington v. Moore, 21 Texas, 546; Gouldy v. Metcalf, 75 Texas, 455; Frost v. Cattle Co., 81 Texas, 509; 1 Devlin's Deeds, sec. 359; Mechem's Agency, sec. 306.

The power of attorney from Amanda J. Wynne did not authorize the conveyance of Mrs. Wynne's community interest in the land in controversy. Moody v. Butler, 63 Texas, 210; Heidenheimer v. Loring, 26 S. W. Rep., 99.

BROWN, ASSOCIATE JUSTICE.—On the 28th day of July, 1892, Sarah J. Wynne, Mrs. A. J. Hill—joined by her husband Edward Hill—E. Randle Horton, Gus Horton and Robert Horton, sued O. G. Parke in the District Court of Hays County to recover 1280 acres of land in that county patented to Margaret Dunn. On the 15th day of February, 1893, the plaintiffs filed an amended petition, in which it was alleged that Sarah J. Wynne had purchased the interests of Henry B. Andrews, E. V. Andrews, Robert W. Andrews, Maud Andrews and Mrs. L. B. Page, Mrs. S. V. James and Mrs. Ella B. Halsey, in the land sued for, which

interests were acquired by Sarah J. Wynne in the year 1892; subsequently Ben Andrews made himself a party plaintiff, claiming an interest in the land, whereby the plaintiffs claimed all of the lands in controversy.

The defendant plead not guilty and the statutes of three, five and ten years limitation, and also plead valuable improvements made in good faith under proper allegations.

The plaintiffs by supplemental petition replied that Amanda J. Wynne died January 9, 1889, and no administrator had been appointed on her estate, and that Mrs. Horton died in 1887 and no administrator had been appointed on her estate, and also the coverture of Mrs. Horton, Mrs. Page and Mrs. Hill, and the minority of E. Randle, Gus and Robert Horton, and Maud Andrews.

Trial was had before the judge who filed conclusions of fact which were adopted by the Court of Civil Appeals, and are in substance as follows: Robert and Amanda J. Wynne were married in 1823 and the land in controversy was conveyed to Robert H. Wynne by Margaret Dunn in 1842. Robert H. Wynne died in 1866, leaving surviving him his widow Amanda J. and their five children—Martha Emma, Sarah J., Amanda Jeanette, Mary Ella and Robert Harrison Wynne.

Martha Emma married H. B. Andrews and died April 13, 1874. She made a will by which she gave all of her interest in the estate of her father Robert H. Wynne to her mother, which will was duly probated. At her death, Martha Emma Andrews left surviving her H. B. Andrews, her husband, and the following children: Ben, born in 1862; Julia J. Page; Edwin B. Andrews, born in 1856; Robert W. Andrews and Sarah B. James. Julia Page and Sarah B. James were married when defendant's possession began.

Robert Harrison Wynne died in 1876, unmarried, leaving as his heirs his sisters Sarah H., Amanda Jeanette and Mary Ella and the children of Martha Emma Andrews and also a grand-daughter of the latter, Maud Andrews, and his mother Amanda J. Wynne.

Amanda Jeanette Wynne married Sidney Brower in 1860, who died prior to 1886, and in 1890 she married Edward Hill.

In 1869 Mary Ella married Gus Horton and died November 19, 1887, leaving three children, E. Randle, Gus and Robert, all minors when the suit was commenced, except Gus, who was over twenty-one years of age.

On the 6th day of August, 1878, Amanda J. Wynne, the widow of Robert H. Wynne, owned one-half of the land as her community interest therein, one-tenth derived through the will of Mrs. Andrews, and one-twentieth part as the heir of Robert Harrison Wynne, her son, making in all thirteen-twentieths of the land in controversy. Sarah J. Wynne owned one-tenth part of the land as heir of her father Robert H. Wynne and one-eightieth part as the heir of her brother Robert Harrison Wynne, making nine-eightieths of the whole. On the date last named Amanda J. Wynne and Sarah J. Wynne made the following power of attorney:

"Know all men by these presents, that we, Amanda J. Wynne, widow

of, and Sarah J. Wynne, daughter of, Robert H. Wynne, deceased, residents of the City and County of Galveston, State of Texas, have made, constituted and appointed, and by these presents do make, constitute and appoint Gustavus Horton, of the City of Calvert, County of Robertson, State of Texas, our true and lawful attorney for us and in our name and stead to hunt up, develop, establish and dispose of all land and land claims belonging to the estate of Robert H. Wynne, deceased, of which we are lawful heirs, and generally to represent and manage our interests in said estate, giving and granting unto our said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that our said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.   In witness whereof we have hereunto set our hands and seals, the sixth day of August in the year one thousand eight hundred and seventy-eight.

> "A. J. Wynne.
> "Sarah J. Wynne."

March 24, 1880, Gus Horton appointed A. C. Herndon substitute agent by a writing in which the following recitals are contained: "Know all men by these presents, that I, Gustavus Horton, attorney for the heirs of the estate of Robert H. Wynne, deceased, duly appointed and constituted as such under a general power of attorney granted by them in the month of August, 1878, with full power of substitution and revocation, have made, constituted and appointed, and by these presents do make, constitute and appoint A. C. Herndon, of Richmond, Fort Bend County, Texas, my true and lawful substitute as attorney for the said heirs in their names and stead to dispose of and execute title to a certain tract of land of 1280 acres, more or less, situated in Hays County, Texas, being the headright of Margaret Dunn, etc."   Under this power of attorney A. C. Herndon, on 26th day of March, 1880, made to the defendant O. G. Parke a deed to the 1280 acres of land, reciting that the conveyance was made as the attorney of the heirs of Robert H. Wynne, deceased, describing the land as the headright of Margaret Dunn, located under certificate issued to her by the Board of Land Commissioners of Matagorda County. All of these instruments were recorded immediately upon their execution.

After the institution of this suit Sarah J. Wynne bought the interest of Julia J. Page, Edwin B. Andrews, Robert W. Andrews, Sarah B. James and Maud Andrews.   No administration was ever had upon the estate of Amanda J. Wynne or Mary Ella Horton.

The District Court gave judgment for the defendant O. G. Parke for 423-480 of all the land in dispute, except the portion in Wren's pasture, and in favor of the said O. G. Parke for 360-480 of that portion of the land in Wren's pasture; in favor of Sarah J. Wynne for 3-480 of the entire tract of land; in favor of the three children of Mrs. Horton each for 18-480 of the entire tract of land; and in favor of Amanda J. Hill

for 54-480 of the land in Wren's pasture; and also in favor of Ben Andrews for 6-480 of the land in Wren's pasture.

The Court of Civil Appeals reversed the judgment of the District Court and rendered judgment as follows: Of 20 acres in Wren's pasture, in favor of O. G. Parke, 48-480; in favor of Amanda J. Hill, 132-480; in favor of E. Randle Horton, Gus Horton and Robert Horton, each 44-480; in favor of Ben Andrews, 14-480; in favor of Sarah J. Wynne, 154-480. Of the remainder of the tract of land, in favor of O. G. Parke for 111-480; in favor of Sarah J. Wynne for 146-480; in favor of Ben Andrews, 13-480; in favor of Amanda J. Hill, 78-480; in favor of E. Randle Horton, Gus Horton and Robert Horton, each 44-480.

O. G. Parke, in his application for writ of error, assigns the following grounds of error to the judgment of the Court of Civil Appeals:

First: The court erred in holding that the power of attorney executed by Amanda J. Wynne and Sarah J. Wynne did not empower their agent to sell and convey the community interest of Amanda J. Wynne and that which she received by inheritance and by will from her children, as well as the interest of Sarah J. Wynne inherited from her brother.

Second: That the court erred in holding that the statutes of limitation as to Amanda J. Wynne and Mrs. Horton were suspended for one year after their deaths, there being no administration

Third: That the court erred in rendering judgment for any of the land in favor of Sarah J. Wynne, Amanda J. Hill and Ben Andrews, because all of their interests had passed by the conveyances under the power of attorney and by the statutes of limitation.

O. G. Parke, the plaintiff in error, was appellee in the Court of Civil Appeals. He presented no assignments of error in that court challenging the correctness of the judgment of the District Court, and in so far as his assignments here call in question the correctness of that judgment, they cannot be entertained by this court. To the extent that these assignments question the judgment of the Court of Civil Appeals, it will be unnecessary for us to notice them except that which calls in question the correctness of that judgment in construing the power of attorney from Amanda J. and Sarah J. Wynne to Gustavus Horton.

When an agent derives his authority from a written instrument, that authority will be limited to the plain import of the language by which it is conferred. (Skaggs v. Murchison, 65 Texas, 153.) In determining what authority was conferred by the power of attorney upon Horton, we must ascertain the intent of the parties from the language used, and when that intention is ascertained it must be enforced the same as in any other instrument.

The power of attorney in question recites that Amanda J. Wynne was the widow, and Sarah J. Wynne the daughter, of Robert H. Wynne, deceased. It empowers Horton to "develop, establish and dispose of all land and land claims belonging to the estate of Robert H. Wynne, deceased," and "generally to represent and manage our interests in said estate with full power to do and perform all and every act and thing neces-

sary to be done in the premises." The words "to represent and manage" must be construed in reference to that which precedes, and means to exercise the power before granted to "develop, establish and dispose of the lands," which being applied in the connection in which it occurs is to be understood that this power is granted with reference to the interests of the parties making the power in the lands belonging to the estate.

The Court of Civil Appeals construed the words "of which we are lawful heirs" as limiting the interests which it was intended to empower Horton to "develop, establish and dispose of." If this be the proper construction, then the power of attorney was inoperative as to Amanda J. Wynne, who was not an heir of the estate in any sense, and her power of attorney would have conferred no power whatever. She would by that act have authorized the sale of that which she did not own, and we must presume that she intended the instrument to have some effect and to enable her agent to perform some acts thereunder which it could not have done under the construction given to it by the Court of Civil Appeals. This construction is equally inconsistent with the language which follows it; that is, that the agent was "generally to represent and manage our interests in the said estate." It is manifest from the instrument that the agent was undertaking to discover and get control of the lands belonging to the estate of Robert H. Wynne, which probably were unknown to the parties at the time, and it would be consistent with the purpose and language used to hold that the makers of the power sought to reduce to possession all of their interests in the lands, rather than it should have been intended only to embrace the one-tenth interest owned by Sarah J. Wynne as daughter of Robert H. Wynne. The description of Mrs. Amanda J. Wynne as widow of the deceased indicates her interest in the land and her relation to the estate. However incorrect it may be, it is not uncommon for non-professional people to regard the widow as heir to the deceased husband, and we conclude that the words, "of which we are heirs," were intended to express what the parties understood to be their relation to the deceased and not to limit the interest to be developed, established and disposed of by the agent.

The District Court properly construed this power of attorney and awarded to O. G. Parke all of the interests which Amanda J. and Sarah J. Wynne had in the property at the time the power of attorney was made. The effect of the deed executed by Herndon under the power of attorney was to convey to Parke all of the interests that those parties had at the time, and the Court of Civil Appeals erred in holding to the contrary. It therefore follows that the judgment of the Court of Civil Appeals is hereby reversed and the judgment of the District Court is affirmed, and that O. G. Parke, plaintiff in error, recover of the defendants in error, and their sureties on the appeal bond, all costs of this court and in the Court of Civil Appeals.

> *Judgment of Court of*
> *Civil Appeals reversed and that of District Court affirmed.*

JUSTICE DENMAN not sitting.