F. E. MACMANUS ET AL. V. E. K. ORKNEY ET AL.

No. 551.—Decided May 6, 1897.

**1. Probate Sale—Description of Property—Collateral Attack.**

An intestate had owned the entire eleven-league survey granted to G. and had sold various tracts out of it. The inventory of his estate described among its lands, "a claim to about six or seven leagues of land, more or less, situated partly in W. and partly in M. County, Texas, being a part of an eleven-league tract of land originally granted to G., the said claim consisting of detached and separate parcels of land within the tract." An application to sell "all the lands belonging to the estate" for the payment of large debts contained the same description, adding, "Whose several contents are unknown." Order was granted to sell all the right, title and interest of J. C., deceased, to about six or seven leagues of land, more or less, situated partly in W. and partly in M. County, Texas, being part of an eleven-league tract of land originally granted to G. As the said land consists of detached and separate parcels, of various sizes and located in different places, within the said tract, whose several contents are unknown, the administrator shall sell the whole right, title and interest to the same at once." Other large tracts embraced in the order were directed to be divided and sold in separate parcels. The report of sale followed the description contained in the order, and the deed that in the application, adding, "It being intended and understood that the whole and entire interest of said J. C., deceased, in said eleven-league tract is hereby conveyed. Held:

(1) The proceedings evinced a determination to sell all the lands of the estate, including all its interest in the eleven league survey in the name of G.

(2) The words "six or seven leagues. more or less," are to be taken as a description of the quantity therein, and did not refer to separate surveys.

(3) The language in the order, "as the land consists of separate and detached parcels," etc., expressed the reason for selling in one body the entire interest of the estate in the eleven-league grant, and did not constitute a part of the description of the land.

(4) If considered a part of the description it could be rejected as false.

(5) The certainty of description required in a conveyance is that, by the use of extraneous evidence, it may be applied to the property so as to identify it.

(6) Rejecting from the order the language last quoted, there still remained sufficient to identify the land.

(7) The proceedings conveyed to the purchaser the entire interest of the estate in the eleven-league grant, as against a collateral attack.

**2. Supreme Court—Reversal—Rendering Judgment.**

See, opinion for case in which, on reversing the judgment of the Court of Civil Appeals, it was held proper for the Supreme Court to render final judgment.

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Walker County.

*F. E. Macmanus & Sons*, for plaintiff in error, F. E. Macmanus. (From brief in Court of Civil Appeals).—The description of the lands in the order of sale is confused and defective, rendered so by the improper incorporation in it of particulars not essential to the identification of the land, and the misplacement of surplus words of quantity. When examined in connection with the inventory, the application for the order, and the order itself and the purpose it was designed to carry out, the seeming uncertainty of the description disappears on applying to it the ordinary rules of construction. Wells v. Polk, 36 Texas, 120; Davis v. Touchstone, 45 Texas, 490; Hurley v. Barnard, 48 Texas, 88; Robertson v. Johnson, 57 Texas, 64; Bowles v. Beal, 60 Texas, 325; Delk v. Punchard, 64 Texas, 364; Hathaway v. Power, 6 Hill, 453; 2 Parsons on Cont., 561, 562; Blake v. Doherty, 5 Wheat., 359.

*J. H. McLeary, F. E. Macmanus*, in pro. per. and *Hogg & Robertson*, in support of Macmanus' application for writ of error, cited to show that the proceedings for sale of the land were not void for insufficiency of description: Bank v. Bank, 84 Texas, 369; Curdy v. Stafford, 88 Texas, 120; Scholes v. Hughes, 77 Texas, 482; Houston v. Myers, 88 Texas, 129; Myers v. Maverick, 27 S. W. Rep., 950; Wig. on Ev., 80, 203; Jarmon on Wills, 745; Hermann v. Likens, 90 Texas, 448.

*Eugene Williams*, for plaintiffs in error, Edward K., Margaret M., and John Orkney, and *Austin & Rose* and *W. M. Jerdone*, for the heirs of F. Gonzales, obtained writ of error on assignments complaining of the judgment allowing a lien on the land for $4000 in favor of Macmanus and the Gonzales heirs. The opinion does not discuss this question.

*Thos. H. Ball, N. A. Cravens* and *Eugene Williams*, for Orkneys, appellees, cited in Court of Civil Appeals, to show that no title passed by the probate sale: Brown v. Chambers, 63 Texas, 131; Morgan v. Smith, 70 Texas, 641; Cook v. Oliver, 83 Texas, 562; Howard v. North, 5 Texas, 290; Norris v. Hunt, 51 Texas, 609; Donnebaum v. Tinsley, 54 Texas, 362; Chiflet v. Willis, 74 Texas, 253; 1 Greenleaf, Ev., sec. 297, page 342; Beze v. Calvert, 2 Texas Civ. App., 209; Davis v. Touchstone, 45 Texas, 497; Robertson v. Johnson, 57 Texas, 64; Wells v. Polk, 36 Texas, 126; Wells v. Mills, 22 Texas, 303.

*Austin & Rose* and *W. M. Jerdone*, for heirs of F. Gonzales, cited in Court of Civil Appeals the following authorities to show the validity of the probate sale: Conveyance of all decedent's interest in survey passes title regardless of quantity or location: Smith v. Crosby, 86 Texas, 15. Every rasonable intendment in favor of the proceedings: Smith v.

Crosby, 86 Texas, 24; Perry v. Blakey, 5 Texas Civ. App., 336; White v. Luning, 93 U. S., 514.

Description may be aided by reference to other probate proceedings in same estate: Davis v. Touchstone, 45 Texas, 497; McBee v. Johnson, 45 Texas, 642; Hurley v. Barnard, 48 Texas, 88; Farris v. Gilbert, 50 Texas, 355; Lindsay v. Jaffray, 55 Texas, 641; Perry v. Blakey, 5 Texas Civ. App., 336; Collins v. Ball, 82 Texas, 266. Defect in order of sale cured by proper order of confirmation: Farris v. Gilbert, 50 Texas, 356. Recitals as to land being in detached parcels, etc., should· be disregarded as being made by mistake: Berry v. Wright, 14 Texas, 273; Kingston v. Pickins, 46 Texas, 101; Wilson v. Smith, 50 Texas, 369; Boon v. Hunter, 62 Texas, 588; Giddings v. Day, 84 Texas, 608. Order of sale need not describe property: Wells v. Polk, 36 Texas, 120; Davis v. Touchstone, 45 Texas, 496; McBee v. Johnson, 45 Texas, 643; Robertson v. Johnson, 57 Texas, 64; Perry v. Blakey, 5 Texas Civ. App., 336. Order of confirmation need not describe property: Neill v. Cody, 26 Texas, 290; Simmons v. Blanchard, 46 Texas, 271; Robertson v. Johnson, 57 Texas, 66; Moody v. Butler, 63 Texas, 212.

Parol evidence was competent to locate the land conveyed: Smith v. Crosby, 86 Texas, 15; Wilson v. Smith, 50 Texas, 370; Giddings v. Day, 84 Texas, 608; White v. Luning, 93 U. S., 514.

BROWN, ASSOCIATE JUSTICE.—For the purpose of quieting title to the land described in the petition, F. E. Macmanus sued Edward K., Margaret M. and John Orkney as heirs of John Cameron deceased, Mary Gonzales, Helen Marcoulides, Theodore H. Marcoulides, Martha P. Schaper and George W. Schaper, heirs of F. Gonzales deceased, John, Clara and Theresa Kleiber, Mary Vivier, Pauline Wells and James B. Wells, heirs of Emma H. B. Kleiber. It was alleged that plaintiff and the heirs of F. Gonzales and the heirs of Mary H. B. Kleiber jointly owned about six and a third leagues of land in a grant of eleven leagues situated in Walker, Montgomery and San Jacinto counties, granted originally to Jose Maria de la Garza by the State of Coahuila and Texas. The heirs of Gonzales appeared and adopted the allegations of the plaintiff's petition, but the heirs of Mary H. B. Kleiber did not appear. The heirs of John Cameron pleaded not guilty, limitation of ten years, and by cross-bill sought to· recover the land from the other parties.

The cause was tried before the court ·without a jury, and a judgment rendered in favor of the heirs of John Cameron for the land described, upon their paying to the other parties $4000 with interest from the date named. From this judgment appeal was taken to the Court of Civil Appeals by both parties, and the judgment of the District Court was affirmed, from which judgment of affirmance the cause was removed to this court by writ of error upon application by all the parties.

The judge who tried the case below filed a full statement of his conclusions of fact, which conclusions were adopted by the Court of Civil

Appeals, and from which we make the following condensed statement of the material facts which bear upon the only question that we consider it necessary to discuss.

John Cameron was the owner of an eleven league grant of land made to Jose Maria de la Garza, and in his life time Cameron sold and conveyed four and two-thirds leagues of the original grant to persons not parties to this suit. Cameron died in 1861 possessed of the remaining six and two-third leagues of the original grant.

There was long continued litigation over the probate of the will of John Cameron, which is unnecessary for us to detail. The will was finally probated and Rufugia Flores y Pena and Nestor Maxan were appointed administrators with the will annexed, by the Probate Court of Cameron County. Maxan qualified as required by law and returned an inventory of the property of the estate, embracing the land involved, which was described in the inventory as follows: "A claim to about 6 or 7 leagues of land, more or less, situated partly in Walker County and partly in Montgomery County, Texas, being part of an eleven-league tract of land originally granted to Jose Maria de la Garza, the said claim consisting of detached and separate parcels of land within the tract—valued and appraised at $13,264."

During the litigation over the probate of the will of John Cameron a temporary administrator was appointed upon his estate and a claim of $50,000 in favor of Dona Refugia Flores y Pena was approved and allowed by the Probate Court of Cameron County, in which that administration was pending. The will of Cameron also secured to the said Pena the payment of the same sum of money. May 30, 1867, for the purpose of paying the claim of Pena, Maxan as the administrator of the estate of Cameron applied to the Probate Court of Cameron County for "an order to sell all of the lands belonging to the estate of the said John Cameron. The application described all of the land upon the inventory and described the land in question as it was described in the inventory, with this addition, "whose several contents are unknown." The application was granted, and all of the lands which appeared upon the inventory of the said estate were ordered to be sold, among which was the land in controversy and which was described in the order of sale as follows: "All the right, title and interest of John Cameron, deceased, to about six or seven leagues of land, more or less, situated partly in Walker County and partly in Montgomery County, Texas, being part of an eleven league tract of land originally granted to Jose Maria de la Garza; as the said land consists of detached and separate parcels of various sizes, and located in different places, within the said tract, whose several contents are unknown, the administrator shall sell the whole right, title and interest to the same at once." In that order, preceding that copied above, three surveys are described and directed to be sold; the first, an eleven league grant, was directed to be divided into five parts; each of the other two consisted of two leagues and was directed each to be divided and sold in two tracts.

The sale was made on the first ·Tuesday in January, 1868, to Simon Mussina, and duly reported to the Probate Court of Cameron County in which report the land sued for was described thus:  "All the right, title and interest of John Cameron, deceased, to about six or seven leagues of land, more or less, situated partly in Walker County and partly in Montgomery County, Texas, being part of an eleven-league tract of land originally granted to Jose Maria de la Garza.  As the said land consists of detached and separate parcels, of various sizes, and located in different places within the said tract, their several contents are unknown; therefore, the right, title and interest to the whole is sold at once to Simon Mussina for $25,000."

The report was duly confirmed by the ·Probate Court, and deed ordered to be made to the purchaser—which was done, and the land con· veyed to Simon Mussina described in the deed made by the administra· tor thus:  "All the right, title and interest of John Cameron, deceased, in and to about six or seven leagues of land, more or less, situated partly in Walker County and partly in Montgomery County, Texas, being part of an eleven-league tract of land originally granted to Jose Maria de la Garza; the said land herein conveyed consisting of detached and separate parcels of different sizes, and located in different places within the said tract, the several contents of which parcels are unknown; it being intended and understood that the whole and entire interest of᾽ said John Cameron, deceased, in said eleven-league tract is hereby con· veyed."

Macmanus and the heirs of Gonzales and the heirs of Mrs. Kleiber have whatever title Simon Mussina acquired under the sale by Maxan.

If the sale by Maxan, administrator of John Cameron, to Mussina ·conveyed the title to the latter, then the plaintiffs were entitled, upon the facts found by the trial court, to a judgment against the heirs of John Cameron for the land, and the other questions presented on both sides become immaterial.  We have omitted such facts as do not bear upon this question, which we consider to be the only one necessary for us to decide.

We conclude that in making the order of sale under which the plaint-iffs in error claim the land in controversy the Probate Court of Cameron County intended to empower the administrator of John Cameron, de-ceased, to sell all of the land belonging to that estate, and that it was the specific intention of the court to empower the administrator to sell the interest of the estate in the eleven league grant to Jose Maria de la Garza.  The court had jurisdiction of the subject-matter of the sale and of the parties interested in the estate.  It was therefore lawful for the court to sell the land and the intention to do so, when ascertained, must be enforced, if the language employed in the order is sufficient to effect the purpose.  Wynne v. Parke, 89 Texas, 413; Hancock v. Butler, 21 Texas, 805; Cartwright v. Trueblood, 90 Texas, 535; Curdy v. Staf-ford, 88 Texas, 123; Hermann v. Likens, 90 Texas, 448.

The conclusion that the court intended to sell all of the lands of Cam-

eron's estate is supported by the following circumstances:  First, the sale was ordered to pay the claim of Pena and costs of administration which, at that date, amounted to more than $80,000, a sum sufficient to require the sale of a large amount of property to liquidate it; second, the administrator applied for an order "to sell all of the lands" belonging to the estate of John Cameron, deceased; third, upon the application of the administrator the court entered an order of sale in which all of the land embraced in the inventory was by description ordered to be sold; and we think that the intention to convey all land belonging to the estate should be considered in construing that part of the order which relates especially to the land sued for.   That it was the intention of the court in making this order to empower the administrator of John Cameron to sell all of the right, title and interest of that estate in the Jose Maria de la Garza eleven league grant is shown by the language used in that part of the order which reads as follows:   "All the right, title and interest of John Cameron, deceased, to about six or seven leagues of land, more or less, situated partly in Walker County and partly in Montgomery County, Texas, being part of an eleven-league tract of land originally granted to Jose Maria de la Garza: as the said land consists of detached and several parcels of various sizes and located in different places within the said tract whose several contents are unknown, the administrator shall sell the whole right, title and interest to the same at once." The language "all the right, title and interest of John Cameron, deceased," expresses the quality of the estate to be conveyed, whether it be in fee, for life, or no right whatever.  It was the claim of John Cameron's estate to the land which was directed to be sold.   The words "to about 6 or 7 leagues of land, more or less," are used to designate the quantity of land to be conveyed.   The word "leagues" as used in this connection signifies the number of acres which constitute a league and does not refer to a definite survey containing that many acres.   This is rendered more certain by the use of the words "more or less" which are particularly applicable to limit the quantity when expressed in acres, but would be wholly unsuitable if used in connection with a number of surveys.   We can with propriety say "more or less acres," but it would not be permissible to say "more or less surveys of land."   Besides the original survey was one tract, containing eleven leagues in quantity, and not eleven league surveys.   There were not 6 or 7 league surveys in the grant, hence there could not have been the intention to say that the estate owned six or seven league surveys within that grant.   The particular locality of the land is pointed out as follows: "Situated partly in Walker County, and partly in Montgomery County, Texas, being part of an eleven league tract of land originally granted to Jose Maria de la Garza."   Then follows a statement with reference to the land, which is given as a reason for the concluding part of the order, as follows: "As the said land consists of detached and separate parcels of various sizes and located in different places within the said tract whose several contents are unknown"; for which reason the court directed that "the

administrator shall sell the whole right, title and interest to the same at once." It is plain that whatever is included in the word "same" is ordered to be sold by the administrator. The word "same" as here used stands for "said tract," which words refer to the before mentioned "eleven league tract of land originally granted to Jose Maria de la Garza." The effect of the order is the same as if it had been written: "All the right, title and interest of John Cameron, deceased, in and to the eleven league grant in the name of Jose Maria de la Garza, situated partly in Walker County and partly in Montgomery County, containing about 6 or 7 leagues of land, about 2800 acres, more or less."

It is insisted that the following language embraced in the order, to-wit: "As the said land consists of detached and separate parcels of various sizes and located in different places within the said tract whose several contents are unknown," constitutes a part of the description of the land, and that it is so indefinite as to be absolutely void, and confers no right upon the purchaser. As we before stated, we regard the language quoted as expressing the reason why the court ordered the sale to be made of the entire interest of Cameron's estate in the eleven league grant instead of having it sold in smaller tracts. If, however, that language be considered a part of the description it is shown to be false, and therefore must be rejected and the order construed as if those words were not embraced in it. Greenleaf, Evidence, sec. 301; Cartwright v. Trueblood, 90 Texas, 535.

The certainty required in a conveyance of land is that, by the use of extraneous evidence, it may be applied to the property conveyed so as to identify it. Eustis v. City of Henrietta, 90 Texas, 468. If we reject from the order the language last quoted, there still remains sufficient by which to identify the land and the order would be effective to carry out the purpose of the court in making it.

Our conclusion that the language "as the said land consists of detached and separate parcels of various sizes," etc., is no part of the description, but expresses the reason upon which the court based the subsequent part of its order, is sustained by a consideration of other parts of that order. Three tracts which precede this in the order of sale are directed to be sold by the administrator in different and definite parcels. Each of those tracts belonged entire to the estate of Cameron, while the Jose Maria de la Garza grant had at one time belonged to Cameron, but a portion had been sold and the condition of it was such that the court at the time was not able, as is shown from the face of the order, to sell any definite and specific tracts in the original grant. Without a survey there was no means by which the description could be made certain except to order the sale of the right of the estate in the whole tract which could be made certain by ascertaining what had been conveyed by Cameron. It would have been more regular for the court to have caused the land to be surveyed and to have ascertained the precise locality of the interest of Cameron before ordering the sale, and if objection had been made in due time on account of the manner in which the land was sold

the Probate Court might have set it aside; but this is a collateral attack upon the judgment of that court; the order of sale is not void, and is therefore, not subject to be attacked in this manner.

We conclude that the District Court erred in entering judgment in favor of the defendants below upon their cross-bill against the other parties and in refusing to enter judgment in favor of the plaintiff and the heirs of Gonzales against the heirs of John Cameron; and the Court of Civil Appeals erred in affirming the judgment of the District Court, for which errors the judgments of the said courts must be reversed.

The duty of this court under such circumstances is prescribed by the Revised Statutes in the following language:

"Article 972.    *    *    *    In each case the Supreme Court shall affirm the judgment, reverse and render the judgment which the Court of Civil Appeals ought to have rendered, or reverse the judgment and remand the case to the lower court, if it shall appear that the justice of the case demands another trial."

The plaintiff's petition sets up that he and the heirs of F. Gonzales, giving their names, and the heirs of Mrs. Kleiber, also naming them, are the joint owners of the land in controversy, and it further alleges that the heirs of F. Gonzales had acquired the title of Mrs. Kleiber in her life time. The petition contains a prayer for a judgment in favor of plaintiff and his co-owners against the defendants and the unknown heirs of John Cameron, quieting the title of the plaintiff and the said co-owners to the land and removing all clouds therefrom. The heirs of Gonzales adopted the allegations of the petition of the plaintiff, but the heirs of Mrs. Kleiber entered no appearance. The undisputed evidence shows that Mary Gonzales, Helen Marcoulides, Theodore H. Marcoulides, Martha P. Schaper and George W. Schaper acquired the title of Emma H. B. Kleiber to the land in controversy during her life time, and that her heirs, John, Clara and Theresa Kleiber, Mary Vivier, Pauline Wells and James B. Wells, had no interest in the land at the institution of this suit.

It is therefore ordered that the judgments of the District Court and the Court of Civil Appeals be, and the same are hereby reversed, and that judgment be here entered that Edward K., Margaret M. and John Orkney, heirs of John Cameron, deceased, and the unknown heirs of the said John Cameron take nothing upon their cross-bill against F. E. Macmanus, Mary Gonzales, Helen Marcoulides, Theodore H. Marcoulides, Martha P. Schaper and George W. Schaper, nor against the heirs of Emma H. B. Kleiber; and that all of the said parties go hence without day as to the said cross-bill. It is further ordered, adjudged and decreed that F. E. Macmanus, Mary Gonzales, Helen Marcoulides, Theodore H. Marcoulides, Martha P. Schaper, George W. Schaper, have judgment against the said Edward K., Margaret M., and John Orkney, and against the unknown heirs of John Cameron, deceased, that all clouds cast upon the title to the land described in plaintiff's petition, be and the same are hereby removed, and that the title of the said Mac-

manus, Mary Gonzales, Helen Marcoulides, Theodore H. Marcoulides, Martha P. Schaper, George W. Schaper, in and to the said land, be quieted as to any claim of the said heirs of John Cameron, deceased. It is further ordered that the said plaintiffs, Macmanus, Mary Gonzales, Helen Marcoulides, Theodore H. Marcoulides, Martha P. and George W. Schaper, have and recover of Edward K., Margaret M. and John Orkney, all costs in this behalf expended, and that the said John, Clara and Theresa Kleiber, Mary Vivier, Pauline and James B. Wells, go hence without da‡, discharged.

*Reversed and rendered.*

*Eugene Williams*, for defendants in error Orkney's, moved for a rehearing, citing against the validity of the probate sale the following additional authorities: Rev. Stats, art. 624; Linney v. Woods, 66 Texas, 27; Pfeiffer v. Lindsay, 66 Texas, 124; 1 Greenl., Ev., secs. 299, 300, 301; 2 Wharton, Ev., secs. 952, 956; 1 Rice, Ev., 275.

He also urged that the Supreme Court erred in rendering judgment against the sureties on the bond of the Orkneys for the entire amount of the costs, in this: That the bond was payable in the sum of $250, whereas the costs may exceed this amount, and the judgment should have limited the responsibility of the sureties on said bond to the sum expressly named in this bond.

The motion was granted as to the judgment for costs against the sureties, but otherwise, was overruled.