## COFFEE et al. v. MANLY et al.

No. 2301.

Court of Civil Appeals of Texas. Eastland.

Oct. 16, 1942.

Rehearing Denied Nov. 13, 1942.

Coffee & Coffee, of Big Spring, for appellants.

McMahon, Springer & Smart, of Abilene, for appellees.

FUNDERBURK, Justice.

On December 31, 1919, Mrs. Mary A. Manly, owner of Sections 36, 37, 40, and 41, Block 14, T. &. P. Railway Company lands in Jones and Shackelford Counties, Texas, formally executed and acknowledged for record, and had recorded, a plat showing a subdivision of said land into 12 equal parts, called subdivisions, numbered from south to north, 1 to 12 inclusive. By deed of the same date (December 19, 1919) she conveyed said 12 subdivisions, describing them as such, each to a different person. By that deed Subdivision 2 was conveyed to S. S. Manly; Subdivision 3 (north of 2) to Amos Manly; Subdivision 4 (north of 3) to Bertha Craig; Subdivision 5 (north of 4) to Effie Shelton; Subdivision 6 (north of 5) to Ruth Manly Ballard; and the remaining subdivisions, each to another and different party, subject to a homestead reservation in a part of Subdivision 8.

On January 1, 1920, a written instrument was executed, which, omitting certificates of acknowledgment, was as follows:

"The State of Texas
"Taylor County
"Know all men by these presents, that we, Bertha Craig and husband, S. A. Craig, and Ruth Ballard and husband, Searcy Ballard, and Effie Shelton and husband, T. A. Shelton, for and in consideration of the sum of Ten Dollars to us in hand paid by S. S. Manly and Amos Manly, the receipt of which is hereby acknowledged, have granted, and do hereby grant unto the said S. S. Manly and Amos Manly, a perpetual right to the use of the water on Subdivisions five and six, of Sections No. 40 and 41, in Blk. 14, T. & P. Rwy. Co. lands in Jones and Shackelford Counties, Texas, being the same land conveyed to us by Mary A. Manly, on Dec'r. 31st, 1919, together with the right and privilege of hauling water off of said land, or driving stock to the same, or so fencing same, that the lands adjoining said subdivisions '5 and 6, and owned by the said S. S. and Amos Manly, may have the use of any water on our said lands. This is a water right only, and shall not be construed as granting any other right or privileges.

"Witness our hands, this Jan'y. 1st, 1920.
"(Signed) S. A. Craig T. A. Shelton
 "Bertha Craig Effie Shelton
 "Searcy Ballard
 "Ruth Manly
 Ballard"

This suit by S. S. Manly and Amos Manly, against Aaron Craig Coffee and Kathryn Craig Thigpen (owners by inheritance from Mrs. Bertha Craig of Subdivision 4), the husbands of each joined as a defendant, seeks to establish as against the defendants as to Subdivision 4 the same rights which plaintiffs have under said water rights contract against Effie Shelton as to Subdivision 5, and Ruth Ballard as to Subdivision 6.

The issues being joined, the Court in a non-jury trial gave judgment for the plaintiffs, from which defendants have appealed.

The judgment, as shown by recitations therein, was based upon a construction of said contract to the effect that the land to which the contract related included Subdivision four the same as it included Subdivisions five and six. The contract states the rights granted to be "a perpetual right to the use of the water on Subdivisions five and six of Sections Nos. 40 and 41 in Block 14, T. & P. Rwy. Co. lands in Jones and Shackelford Counties, Texas * * *, together with the right and privilege of hauling water off of said land or driving stock to the same or so fencing the same, that the lands adjoining said Subdivisions '5 and 6 and owned by the said S. S. and Amos Manly may have the use of any water on our said lands".

The contract affirms the identity of said Subdivisions five and six with the "land conveyed to us [i. e., the Grantors in said contract] by Mary A. Manly on December 31, 1919". The fact so affirmed is in a sense true and in another sense patently untrue. The land comprising Subdivisions five and six is not the same land conveyed to any one or to all of the grantees in the deed of Mary A. Manly, dated December 31, 1919. Subdivision 5 was the same land conveyed by said deed to Effie Shelton only. Subdivision 6 was the same land so conveyed to Ruth Ballard only, but neither Subdivision 5 nor Subdivision 6 was the same land conveyed to T. A. Shelton, Searcy Ballard, S. A. Craig, or Bertha Craig, each of whom was a party grantor in said contract. Further, Subdivision 5 was not the same land conveyed by said deed to Ruth Ballard; nor was Subdivision 6 the same land so conveyed to Effie Shelton.

It is plainly evident that this controversy could never have arisen but for the clause in the contract reading thus: "being the same land conveyed to us by Mary A. Manly on December 31, 1919." It becomes necessary to determine the nature and proper effect of this clause, and in order to do so it is well, we think, first to consider its purpose, or purposes, if more than one.

Such a reference could, of course, have served the purpose of supplying wholly the description of the land; as would have been the case if the contract contained no other description. That such was not the purpose of the reference may be assumed from the fact that the contract, independently of the reference, described the land sufficiently to identify it and enable it to be located.

Another purpose of the reference could have been to show from what source the land was derived and as a help in tracing the title. Still another purpose could have been to furnish an additional or more detailed description of the land. We think we may assume that said reference was for one or the other, or both, of the last named purposes.

█ Considering these in order, if the first named was the purpose, then the law applicable is stated in Corpus Juris Secundum as follows: "Where a reference to another deed is made merely for the purpose of showing from what source the land was derived, and as a help in tracing the title, it has been held that it will not operate to *enlarge* or restrict the description given in the deed from which reference is made." 26 C.J.S. Deeds, § 101, page 372 (italics ours). This statement assumes, of course, an adequate unambiguous description in the "deed from which reference is made". That such a reference, when made for such purpose, may not be given the effect of enlarging the description, is supported by the authorities generally, and by the one Texas decision cited. Scheller v. Groesbeck, Tex.Com.App., 231 S.W. 1092. If therefore, it be assumed that such was the purpose of the reference in question, these authorities deny the effect given it by the judgment of the court below.

It seems more probable, we think, that the second purpose of the two last mentioned above was the real one. There were descriptive elements, or details of the description, of "Subdivisions five and six" in the deed to which reference was made, not mentioned in the description given in the contract. The description of Subdivisions 5 and 6 in the deed added to their description in the contract the information that each of said subdivisions was of equal width and length; that each was 316⅔ vrs. in width, by 3,800 vrs. in length. Equally with the recorded plat, but not more certainly, the deed, as did not the contract, showed the relative positions of Subdivisions 5 and 6, i. e., 6 as north of 5, or 5 as south of 6. The latter statement is for the sake of accuracy and not because it is deemed material, since, as regarding the identity of Subdivisions 5 and 6 as described in the contract and in the deed, their relative positions as a matter of description would seem to be of no importance. It does thus appear, however, that the reference to the deed did serve a purpose, which is a proper purpose, in that thereby was added some further descriptive data entirely consistent, however, with the description in the contract.

But the contention is substantially that the reference to the deed had the effect of enlarging the description to include Subdivision 4, or if not certainly so, of creating an ambiguity rendering parol evidence admissible to show enlargement of the description to include Subdivision 4.

█ We think, in the first place, that the above quotation from C.J.S. of the rule applicable, where the purpose of the reference is that merely "of showing from

what source the land was derived, and as a help in tracing the title", is no less applicable where, following *a sufficient description*, the reference is made to another deed for additional description. The authority before quoted, in discussing the general rule that a particular description will control a general description, states a qualification believed to be applicable here. It says: "Further, the rule that a later specific description in a deed controls a prior general description is limited to the evident subject matter of the conveyance and does not require the inclusion of other matter." Id., § 100, page 365. In the instant case the evident subject matter, as regards the land involved, is Subdivisions 5 and 6. As to the general rule, said authority says: "A reference to another deed for the purpose of a more particular description has been regarded as a general description, within the meaning of the rules under consideration. So, where a description in a deed is clear and complete, a reference to other deeds will not necessarily operate to restrict". Id., § 100, page 366. Just as certainly, we think, under the same circumstances such references were not necessarily operative to *enlarge* it.

██ It seems to us that the question for decision may be correctly stated as follows: where a written instrument conveying an interest in land contains a clear and specific description of the land, followed by a declaration that the land so described is the same as that conveyed to the signers of said instrument in a certain deed, and such declaration is untrue, except in a limited and qualified sense, involving no conflict between the descriptions in the instrument and the deed, what effect may properly be given to such declaration, in the sense and to the extent, that it is untrue? We think the foregoing discussion and authorities quoted forecast the true answer. However, the question, in our opinion, has been answered by our Supreme Court as follows: "It is not permissible to give controlling effect to that which creates an ambiguity, and destroys the certainty which is expressed by other language, and thus overthrow the clear and explicit intention of the parties." Cartwright v. Trueblood, 90 Tex. 535, 39 S.W. 930, 932. Treating Subdivisions 5 and 6, as described in the contract and in the deed to which the contract refers, as *one* tract, and Subdivision 4 as described in the deed as another tract, is it permissible to prove by parol evidence

the intention to convey the two tracts instead of the one? This question is answered in Clark v. Gregory, 87 Tex. 189, 27 S.W. 56, 57, wherein it is said of a deed which purports to convey one tract that if "it is proposed to show, by parol testimony, not that the intention was to convey one, in particular, but that it was to convey both, the offer is not to remove an ambiguity, and to identify a thing that has actually been conveyed, but it is to enlarge the operation of the instrument, and to make it convey two tracts of land, contrary to the expressed intention to convey one only." The contract in suit having specified Subdivisions 5 and 6, in two instances, as the land concerning which the water rights were granted, the declaration "being the same land", etc., negatives any intention to grant the water rights upon any other land. It is a negation that the land declared to be identical includes something in addition to Subdivisions 5 and 6.

Recurring to the question: what effect may properly be given to the description in the deed to the extent and in the sense that same is patently untrue, the Supreme Court indicated in Macmanus v. Orkney, 91 Tex. 27, 40 S.W. 715, 717, that it had already determined that question in Cartwright v. Trueblood, supra. Citing the Cartwright case, the Court, concerning the order involved, corresponding to the contract in this case, said: "As we before stated, we regard the language quoted as expressing the reason why the court ordered the sale to be made of the entire interest of Cameron's estate in the 11-league grant, instead of having it sold in smaller tracts. *If, however, that language be considered a part of the description, it is shown to be false, and therefore must be rejected, and the order construed as if those words were not embraced in it.*" (italics ours.)

██ It should be borne in mind that this is not a case involving an inconsistency in field notes designating the boundaries of land. Even in such case, however, it is said: "Once testimony is adduced to establish an inconsistency in field notes, parol evidence which throws light upon which call is true and which call is false is admissible." Wilson v. Giraud, 111 Tex. 253, 263, 231 S.W. 1074, 1078. Admissible for what purpose? The next sentence of the opinion answers that question thus: "The purpose of admitting the parol evidence is not to override that which is written, but to

properly interpret it. Where it is impossible to give effect to all that is written, effect will be given to that which may be found to be true." Id. In the instant case the purpose of the evidence relied upon to show the inclusion of Subdivision 4 was not to interpret what was meant by Subdivision 5 and Subdivision 6 so that same could be located, but to override the necessary implication that only Subdivision 5 and Subdivision 6 were subject to the water rights.

 It is erroneously assumed, we think, that the so called ambiguity only arises upon application of the combined descriptions in the contract and the deed to the land. The claimed ambiguity arises at once upon reading the deed to which the contract refers. From such reading it appears that Subdivision 5 is the same land conveyed by the deed to Effie Shelton and Subdivision 6 is the same land so conveyed to Ruth Ballard. There is no inconsistency between the descriptions of said subdivisions as given in the contract and as given in the deed. The inconsistency is in the declaration that Subdivision 5 and Subdivision 6 is the "same land conveyed to us"—i. e., the signers of the contract. Manifestly that inconsistency does not render uncertain the description of Subdivision 5 and/or Subdivision 6. True, it does provoke the speculation: why did Bertha Craig and her husband, S. A. Craig, join in the contract? It is not necessary to know the reason. One reason may have been—and it may be granted that there is confirmatory evidence thereof—that it was the intention of the parties to include Subdivision 4 along with Subdivisions 5 and 6. It is none the less apparent that, if so, the contract failed to express such intention. The count in plaintiff's petition seeking a reformation of the contract upon that theory was abandoned.

To further test the correctness of our conclusions, let us suppose that Bertha Craig and her husband had not been parties to the contract. In that case, could any valid contention have been made that the contract expressed an intention to include Subdivision 4? That, we think, would hardly be contended. It is true that even in that case the evidence in this record would not show that any lands "owned by

the said S. S. and Amos Manly" were "lands adjoining said Subdivisions five and six"; but even as it is such evidence does not show any land of S. S. Manly adjoining Subdivisions 5, 6, or 4, or any land of S. S. or Amos Manly adjoining Subdivision 6. The contract does not say, nor necessarily mean, that the lands adjoining said Subdivisions 5 and 6 [or Subdivision 4] and owned by said S. S. and Amos Manly was Subdivision 2 owned by S. S. Manly and/or Subdivision 3 owned by Amos Manly. Suppose at the time the contract was made, S. S. and Amos Manly contemplated the acquisition of Subdivision 4 or Subdivision 7 (certainly adjoining 5 and 6), just as the evidence shows that afterward they did acquire Subdivision 1, would not the contract have been clear in meaning and fully enforcible? It would seem to us to be susceptible to that interpretation.

On the whole it appears to us that the only ambiguity, if any, is in the word "us" in the clause "being the same land conveyed to us by Mary A. Manly on December 1, 1919". Production of the deed referred to shows an ambiguity in the word "us", since, if it means all the signers of the contract, the deed did not convey the same land as Subdivision 5 and Subdivision 6 to said signers. The deed conveyed nothing to three of the signers—S. A. Craig, T. A. Shelton, and Searcy Ballard. Therefore, in any event, "us" must be construed to mean the same as *some of us*. It clearly shows which of the "some of us" is meant, namely, Effie Shelton and Ruth Ballard. There is no uncertainty as to which is true and which is false, and by accepting the true and rejecting the false, there is no more uncertainty in the description in the deed than in the contract.

It would greatly extend this opinion to enter into a discussion of the reasons why we think this case is distinguishable from those relied upon by appellees. The principles discussed are believed to disclose sufficiently the distinction.

It is our conclusion that the judgment should be reversed and judgment rendered for appellants to the effect that appellees take nothing by their suit. It is accordingly so ordered.