# Supreme Court of Texas

---

No. 24-1062

---

In re Dr. Robert Tafel, et al.,

*Relators*

---

On Petition for Writ of Mandamus

---

JUSTICE BLAND, joined by Chief Justice Blacklock and Justice Young, concurring.

The Court holds that qui tam claims survive a relator's death because the State owns and ultimately directs these claims, and I agree. The statute authorizing such claims makes no provision, however, for a qui tam relator to transfer, devise, or assign the State's claims to another. The relator instead acts on the State's behalf in exchange for a share of the proceeds the State recovers to redress the State's injury. The statute bars third-party intervention into the suit. Given our Court's wariness of delegations of public authority to private actors, we should interpret the statute as granting only those powers expressed within it.

The parties did not argue capacity before the trial court, and thus the Court properly declines to address the executor's capacity to prosecute this suit. I accordingly join its opinion. I write separately to

observe the differences between the survival of the State's claim and an executor's capacity to pursue it.

## I

Dr. Scott Ludlow brought a qui tam suit as a statutory relator against Dr. Robert Tafel and his dental practices. Ludlow alleges that Tafel sought reimbursement from the Texas Medicaid program for unnecessary dental treatment in violation of the Texas Health Care Program Fraud Prevention Act. Ludlow died while suit was pending. The trial court then permitted the executor of Ludlow's estate to take his place as the qui tam relator.

Tafel moved for summary judgment, arguing that relator status does not survive the relator's death or transfer by inheritance and thus the suit must be dismissed. The State filed a "Statement of Interest" asserting it had the right to object to Tafel's summary judgment motion because: (1) it retains the right to intervene; (2) it may settle with the defendant over the relator's objection; (3) it is entitled to any recovery obtained; (4) the relator has no right to dismiss the action without the State's consent; and (5) it "retains the broad authority . . . to dismiss the action 'notwithstanding the objections' of the relator."[1] The trial court denied the motion, the court of appeals denied mandamus relief, and this proceeding followed.

## II

As the State told the trial court: "A [qui tam] claim belongs to the State." For the reasons stated in the Court's opinion, I agree. Whether

---

[1] *See* Tex. Hum. Res. Code §§ 36.104(b-1), .107, .110.

the Act authorizes some other private individual to pursue the State's claim in the name of the relator is a different question. Every textual indication at this preliminary review supports the conclusion that it does not.

The statute does not grant the relator the right to assign the claim to another or pass it through inheritance. If such a right exists, it must be implied from the powers expressly delegated. Two rules of construction guide the analysis. First, in delegating state authority, the Legislature confers only those powers identified by express statutory language and those necessary to fulfill an identified function or duty.[2] Second, "courts should subject private delegations [of state authority] to a more searching scrutiny than their public counterparts."[3]

---

[2] *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) (noting administrative agencies "may exercise only those powers the law, in clear and express statutory language, confers upon them"); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003) ("[A] commissioners court may exercise only those powers expressly given by either the Texas Constitution or the Legislature."); *Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 531 (Tex. 2016) ("[G]eneral-law municipalities . . . 'are political subdivisions created by the State and, as such, possess [only] those powers and privileges that the State expressly confers upon them.'" (second alteration in original) (quoting *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004))).

[3] *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex. 1997); *see also Empire Gas & Fuel Co. v. State*, 47 S.W.2d 265, 272 (Tex. 1932) ("The rule is also well settled that legislative grants of property, rights, or privileges must be construed strictly in favor of the state on grounds of public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld.").

The statute authorizes the relator to share in any recovery for the State's injury.[4] Ultimately, however, the relator's authority derives from and yields to the State's authority. The Act provides that the relator's "right to continue as a party to the action" is subject to the State's control through the State's right to dismiss or settle the action or to pursue an alternate remedy.[5] Further, on the State's or the defendant's motion, the trial court may curtail the relator's right to participate.[6] The trial court may reduce the relator's share of the proceeds if it finds the relator planned or initiated the fraud and it must dismiss the relator from the action if the relator is convicted of criminal conduct arising out of the relator's participation in the fraud.[7]

The combination of authority to act plus control by another is the hallmark of agency.[8] An agent consents to act on behalf of a principal, subject to the principal's control.[9] When an agent acts within its authority, the agent does so "with the same force and effect as if the

---

[4] Tex. Hum. Res. Code § 36.110.

[5] *Id.* §§ 36.107, .109(a). Even when the State declines to participate, the relator "may proceed" subject to the State's right to later intervene. *Id.* § 36.104(b), (b-1).

[6] *Id.* § 36.107(d)–(e).

[7] *Id.* § 36.111.

[8] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017) ("Authority to act on the principal's behalf and control are the two essential elements of agency.").

[9] *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 343 (Tex. 2023).

principal had performed the act himself."[10] As the State's agent, the qui tam relator has no right to exceed the authority the State has legislatively delegated.[11]

A concurring opinion suggests that the relator in this case possessed his own claim, to which his executor succeeds "automatically."[12] There is no textual basis for this assumption. The statutory permission to "bring a civil action for a violation of Section 36.002 for the person and for the state" that "shall be brought in the name of the person and of the state" does not grant an independent claim.[13] Federal precedent interpreting a federal statute is not sufficiently analogous to the Texas statute to apply. As members of our Court have observed, the Federal Claims Act employs a damages model distinct from Texas's penalty scheme, suggesting that federal jurisprudence may have limited value in interpreting the Texas statute.[14] Assignment relationships rely on an agreement to determine

---

[10] *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017).

[11] *See Parke v. Wynne*, 34 S.W. 907, 909 (Tex. 1896) ("When an agent derives his authority from a written instrument, that authority will be limited to a plain import of the language by which it is conferred.").

[12] *Ante* at 4 (Busby, J., concurring).

[13] Tex. Hum. Res. Code § 36.101(a); *cf. PPG Indus., Inc. v. JMB/Hou. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004) ("But we must at least begin our analysis by noting that the Legislature clearly knew how to indicate that warranty claims were assignable, but did not do so in the DTPA.").

[14] *In re Novartis Pharm. Corp.*, 722 S.W.3d 720, 721–22 (Tex. 2025) (Young & Sullivan, JJ., statement respecting the denial of the petition for writ of mandamus).

the scope and nature of the assignment.[15] A qui tam relator therefore has no "status and right" beyond what the statute confers.[16]

With this understanding, it is evident that the relator has no right to devise, transfer, or otherwise assign its authority in the absence of the statute's delegation of such a power. The relator's authority to act is not a "claim" independent of the State's claim. A common-law survivability analysis simply does not apply as it presupposes the relator possesses an independent claim rather than merely the authority to pursue the State's claim.[17] The Act—from which the relator's authority is derived—is silent on the relator's power to transfer this statutory authority to another or self-appoint a replacement. On the contrary, the Act *bars* intervention by persons other than the State.[18]

The State's brief suggests that the executor has "an interest in the survival and resolution of Dr. Ludlow's claims." She does not. To the extent the State argues that declining to permit qui tam relators to pass their authority on to others will "jeopardize the public interest in health

---

[15] *See Signature Indus. Servs. LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 196 (Tex. 2022) (rejecting assignment theory in the absence of words or actions indicating an intent to assign); *see also Assignee*, Black's Law Dictionary (12th ed. 2024) ("Use of the term is so widespread that it is difficult to ascribe positive meaning to it with any specificity. Courts recognize the protean nature of the term and are therefore often forced to look to the intent of the assignor and assignee in making the assignment — rather than to the formality of the use of the term *assignee* — in defining rights and responsibilities.").

[16] *See* Tex. Hum. Res. Code § 36.104(b-1).

[17] Had the case proceeded to judgment or settlement, the relator's estate would have an interest in collecting the proceeds to which the relator became entitled.

[18] *Id.* § 36.106.

and safety and the public policy interests in the creation and enforcement of the [Act]," that purpose is achieved through the means the Legislature authorized, not judicial interlineation. "[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law."[19] The Legislature may have other considerations in mind, such as whether assignability risks the creation of a secondary financial market for qui tam suits.[20] We should not judicially fill legislative silence in light of our narrow view of State-delegated authority to private actors.[21]

Qui tam actions are brought in the name of the State.[22] The relator's death suffices as "good cause" justifying the State's late intervention, as the statute permits.[23] Such an event, however, does not justify a third party's intervention as a relator, which the statute expressly forbids.

---

[19] *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 570 (Tex. 2014) (plurality op.) (alteration in original) (quoting *Rodriguez v. United States*, 480 U.S. 522, 526 (1987)). Whether or not permitting executors to continue qui tam claims aids in maintaining the integrity of the Texas Medicaid program, *see ante* at 2 (Busby, J., concurring), our focus cannot drift from the plain text of the statute to the arguable salutary effects of expanding the powers of the qui tam relator.

[20] *See In re Xerox Corp.*, 555 S.W.3d 518, 536 (Tex. 2018) (describing proceeds accruing to the qui tam relator as a "statutory bounty").

[21] *See Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 432 (Tex. 2023) ("'[L]egislative silence . . . does not give us the power' to legislate from the bench." (alteration in original) (quoting *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004))).

[22] Tex. Hum. Res. Code § 36.101(a).

[23] *See id.* § 36.104(b-1).

*     *     *

A qui tam relator does not possess a "claim" to transfer to another but instead acts on the State's behalf to recover for fraud perpetrated against the State. Proceeding with the suit in its present form may result in an irreversible waste of judicial and public resources.[24] The capacity issue remains on remand,[25] and the State is free to intervene to prosecute the suit. With these thoughts on the nature of the relationship between the State and a qui tam relator, I join the Court's opinion and concur in the judgment.

Jane N. Bland<br>
Justice

**OPINION FILED:** June 19, 2026

---

[24] *See In re UMTH Gen. Servs., L.P.*, 725 S.W.3d 424, 432–33 (Tex. 2025).

[25] Tafel has not waived or conceded the capacity issue by asserting other issues in a petition for writ of mandamus. *Contra ante* at 1 (Busby, J., concurring). Tafel's brief acknowledges the possibility that the claims belong to the State and further observes that whether common-law survivability rules apply in such a case is a question of first impression. Tafel's brief stresses the importance of having this Court resolve the predominant question of whether the State's claim remains *at all*. In context, Tafel's acknowledgment that survivability rules may not apply to claims belonging to the State is not a concession that the executor has the capacity to proceed with the State's claim.