James **CLARK**, et al.,
Plaintiffs–Appellants,

v.

**AMOCO PRODUCTION COMPANY**, et al., Defendants–Appellees.

No. 89–6075.

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1990.

Rehearing Denied Sept. 12, 1990.

Richard A. Ferris, Ferris, DiPaolo & Russo, Pittsburgh, Pa., for plaintiffs-appellants.

Robert P. Thibault, Brian S. West, Texaco, Inc., Houston, Tex., for Texaco, Inc.

Cynthia Keely Timms, Michael V. Powell, Morris Harrell, Locke, Purnell, Rain & Harrell, Dallas, Tex., Robert Joyce, Mobil Producing Texas and New Mexico, Inc., Houston, Tex., Don Jemison, Phillips Petroleum Co., Bartlesville, Okl., Melvin L. Hawkins, Amoco Producing Co., Houston, Tex., for Mobil, Amoco, and Phillips.

Before CLARK, Chief Judge,
GARWOOD and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiffs James Clark and Dan Profitt, in their capacity as administrators of James R. Meadors's estate, brought this diversity suit in federal district court against four oil companies that allegedly had extracted, without payment or permission, billions of dollars worth of oil and gas from lands in which Meadors owned a one-eighth interest. The district court granted summary judgment in favor of the defendant oil companies, concluding that the deed upon which the plaintiffs based their claim conveyed rights only to four specified tracts of land in which the companies had never held any interest. Finding no error, we affirm.

### I.

This controversy began approximately eight years ago, when plaintiffs, claiming to be the heirs of Meadors (who had died in 1939), filed suit in Texas state court, seeking to obtain records that they believed would establish Meadors's interest in certain valuable oil-producing lands in Jefferson County, Texas.[1] The defendants removed the case to federal district court and successfully moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Clark v. County & State Probate Courts of Jefferson County,* No. B–82–917–CA (E.D.Tex.1982). Plaintiffs did not appeal that dismissal.

In 1983, plaintiffs were appointed the administrators of Meadors's estate by the Register of Wills of Allegheny County, Pennsylvania. In their capacity as administrators, they initiated this diversity suit in federal district court in Pennsylvania against four oil companies,[2] again seeking to establish Meadors's interest in the Jefferson County lands and to obtain an accounting of all minerals produced therefrom. Such an accounting, plaintiffs asserted, would reveal that the Meadors estate was entitled to at least twenty billion dollars in royalties from the oil companies' unauthorized use of, and production from, the properties for more than seventy years.

The basis of plaintiffs' claim is a 1911 deed from Ephraim Garonzik to Meadors that purported to convey four specifically described tracts of land in Jefferson County. In addition, the deed stated that those four parcels were all the lands in Jefferson County that certain members of the

---

1. Those lands were thought to include the famed Spindletop Oil Field. As we explained in an earlier appeal of this case, "[t]he Spindletop Oil Field has been a leading source of oil production since 1901. The discovery of the 'Lucas Gusher' at Spindletop began the East Texas oil boom. Uncounted billions of dollars worth of oil have since been produced in the Spindletop field. Production continues to this day." *Clark*

*v. Amoco Production Co.,* 794 F.2d 967, 969 n. 2 (5th Cir.1986).

2. Except where it is necessary to distinguish them, the four defendant corporations—Amoco Production Company, Mobil Oil Corporation, Phillips Petroleum Company, and Texaco Inc.—are referred to collectively simply as the "oil companies."

McFadden family had inherited from their ancestor, William McFadden, and that the intent of the grantor was to convey all the properties in the thus-defined McFadden inheritance.[3] According to plaintiffs, the language "and this deed is intended to convey ... one eights [sic] interest in and to all properties that the said ... [McFaddens] are entitled to by inheritance ... of every description whatsoever" demonstrated that the 1911 deed was intended to convey a one-eighth interest not only in the four described tracts but also in all the Jefferson County lands once owned by the McFaddens—lands that included parts of the Spindletop field[4] and from which the oil companies had extracted billions of dollars worth of oil and gas.

After the oil companies obtained a transfer of the case to a federal district court in Texas, they filed a motion to dismiss pursuant to rule 12(b)(6), asserting that it was evident from the face of the complaint that the suit was barred by the doctrines of laches and presumed lost deed.[5] In addition, they argued that the matter was *res judicata*. The district court granted the motion on the ground that the claim was barred by laches and presumed lost deed but did not address the res judicata issue.

In *Clark I*, we reversed and remanded, concluding that the face of the complaint did not establish the affirmative defenses of laches and presumed lost deed and that the claim was not barred by *res judicata* because the earlier lawsuit had not involved identical parties.[6] We noted, however, that a full trial on the merits might prove unnecessary, because "the district court ha[d] available expeditious procedures which it ... [could] use to resolve this case short of trial." 794 F.2d at 974.

On remand, the district court employed one such "expeditious procedure" by granting summary judgment in favor of the oil companies. The court reasoned that the 1911 deed unambiguously conveyed an interest only in four parcels of land and that the undisputed evidence established that the oil companies had never owned any interest in, or produced any oil or gas from, those properties.[7] Thus, assuming *arguendo* that the Meadors estate in fact owned

3. The pertinent portions of the deed are quoted below:

I, Ephraim Garonzik, of the County of Dallas, State of Texas, for and in consideration of the sum of Ten (10) Dollars and other considerations, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, and by these presents do grant, sell and convey unto the said James Meaders [sic] of the County of Dallas, State of Texas, an undivided one-eighth interest in and to the following described tracts and parcels of land, to-wit: Situated in the State of Texas, County of Jefferson, and more fully described as hereinafter set forth, the said property herein conveyed being four (4) tracts....
[A specific description of the four tracts—Abstracts 166, 181, 182, and 183—follows.]
... [T]he above described property herein conveyed is all the property that the that [sic] J.H. McFadden, R.D. McFadden, and A.J. McFadden inherited through their ancester [sic], Wm. McFadden, and this deed is intended to convey to the said James Meaders [sic] one-eights [sic] interest in and to all properties properties [sic] that the said J.H. McFadden, A.J. McFadden, and R.D. McFadden are entitled to by inheritance through their ancestor, the said Wm. McFadden, of every description whatsoever, situated in the said County of Jefferson.

4. The oil companies acknowledge that the McFadden family at one time owned the land where the original Spindletop oil well, the 'Lucas gusher,' was located.

5. As we explained in *Clark I*, "[u]nder the doctrine of presumed lost deed, a deed may be presumed to have been executed to one who has been in possession of land for a long period of time under a claim of title.... The presumed lost deed doctrine requires the proof of three elements: (1) a long asserted and open claim; (2) a nonclaim by the apparent owner; and (3) acquiescence by the apparent owner in the adverse claim." 794 F.2d at 970.

6. In the prior action, plaintiffs had sued only two of the four oil companies named as defendants in the instant suit and had proceeded in their individual, rather than representative, capacity.

7. The district court also granted summary judgment in favor of defendant Texaco Inc. on the basis of its discharge in bankruptcy. The plaintiffs consented to the summary judgment in favor of Texaco and do not contest it on appeal; accordingly, only the liability of the remaining three oil companies is still at issue.

rights in the four parcels,[8] the plaintiffs had asserted those rights against the wrong defendants.

On appeal, the plaintiffs maintain that the 1911 deed is at least ambiguous as to whether it covers more than the four specifically described tracts and, accordingly, that the district court erred in refusing to consider extrinsic evidence to resolve the ambiguity. The oil companies, on the other hand, assert that the 1911 deed is unambiguous on its face and that the court properly refused to consider extrinsic evidence that would serve only to create, rather than to resolve, an ambiguity.

## II.

We agree with the oil companies that the 1911 deed unambiguously evinces an intent to convey only the four specifically described tracts. The deed initially states that "the property herein conveyed ... is four (4) tracts." It then provides a legal description of those four properties and further explains, more generally, that "the above described property herein conveyed is all the property" that the McFaddens inherited from William McFadden. Finally, and somewhat redundantly, the deed adds that it is intended to convey a one-eighth interest in all the lands inherited by the McFaddens from William McFadden—a term already defined within the instrument as equal to the four described tracts.

There is thus no merit to plaintiffs contention that the deed is ambiguous on its face and that extrinsic evidence—that is, the inventory of the William McFadden es-tate—must be admitted in order to resolve the ambiguity. While it is true that parol evidence may be admitted to resolve ambiguities in a deed or to ascertain the meaning of a general description,[9] the deed in this case becomes ambiguous only when extrinsic evidence is introduced to show, contrary to the express terms of the deed, that the McFadden estate contained more than the four parcels of land. Such use of extrinsic evidence is impermissible under Texas law, which holds that "parol evidence will not be received to create an ambiguity or to give the contract a meaning different from that which its language imparts." *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 368 (Tex. Civ.App.—Amarillo 1977), *aff'd*, 569 S.W.2d 480 (Tex.1978).[10]

In *Coffee v. Manly*, 166 S.W.2d 377 (Tex. Civ.App.—Eastland 1942, writ ref'd), the court applied that rule in interpreting a deed quite similar to the one at issue here. There, the deed in question granted the plaintiffs water rights on subdivisions five and six and further stated that those parcels were "the same land conveyed to us [the grantors] by Mary A. Manly on December 31, 1919." At trial, the plaintiffs proved by extrinsic evidence that Mary A. Manly in fact had conveyed subdivision four, as well as subdivisions five and six, to the defendant grantors on the date in question; accordingly, they were awarded water rights on subdivision four.

On appeal, however, the court reversed and rendered judgment for defendants,

---

8. The district court also found that the plaintiffs had failed to demonstrate a complete chain of title to three of the four described tracts. In addition to the 1911 deed, plaintiffs had produced (1) a 1907 deed from Anthony Lucas to Garonzik, conveying a one-eighth mineral interest in the lands inherited by the McFaddens from William McFadden, and (2) an 1898 agreement (which could be a lease or a deed) between Racheal McFadden and Lucas concerning mineral production on the lands contained in William McFadden's estate. The records of the McFadden estate, however, indicate that it did not contain three of the parcels—Abstracts 166, 182, and 183—specifically described in the 1911 deed.

9. *See, e.g., Blanco, Inc. v. Porras*, 897 F.2d 788, 792 n. 6 (5th Cir.1990) (extrinsic evidence admissible to explain general land description in instrument "so long as the instrument itself contains a sufficient nucleus of description ...") (citing *Pickett v. Bishop*, 223 S.W.2d 222, 224 (Tex.1949); *Smith v. Sorelle*, 87 S.W.2d 703, 705 (Tex.1935); *Wilson v. Smith*, 50 Tex. 365, 370 (1878)).

10. *See also Nuclear–Medical Laboratories, Inc. v. First Nat'l Bank*, 629 S.W.2d 74, 76 (Tex.App.—Dallas 1981, writ ref'd n.r.e.) (interpreting lease); *Lincoln Liberty Life Ins. Co. v. Goodman*, 535 S.W.2d 7, 11 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) (interpreting insurance contract).

holding that the deed was unambiguous on its face and that extrinsic evidence could not be admitted to contradict it or to create ambiguities. As the court explained, "[i]t is not permissible to give controlling effect to that which creates an ambiguity, and destroys the certainty which is expressed by other language...." *Id.* at 380 (quoting *Cartwright v. Trueblood*, 90 Tex. 535, 39 S.W. 930, 932 (1897)).

In sum, both the plain language of the 1911 deed at issue in this case and controlling Texas precedent require us to conclude that the Meadors estate at most is entitled to a one-eighth interest in the four specifically described tracts.[11] Because the undisputed evidence demonstrates that the oil companies have never owned any interest in those four parcels or produced any oil or gas from them, the district court correctly granted the companies' motion for summary judgment.

AFFIRMED.

---

**11.** Because it is unnecessary to our disposition of this case, we do not reach the question of whether plaintiffs have demonstrated a complete chain of title to those four parcels.