Jewell **ROBBINS,** Appellant,

v.

**HNG OIL COMPANY, et al.,** Appellees.

**No. 09–93–107 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 13, 1994.

Decided June 23, 1994.

Joseph P. Conner, Brenham, Kyle Davis, Chappell Hill, for appellant.

John G. Tucker, Orgain, Bell & Tucker, Beaumont, Ronald G. Manning, Pogo Producing Co., Houston, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Appellant, Jewell Robbins, individually and as attorney-in-fact for Abigail Meaders, timely appealed from the granting of a summary judgment. Robbins contends that Abigail Meaders is the heir of James Meaders. Robbins takes the position that in her capacities she is the owner of an undivided one-eighth

interest in and to described tracts and parcels of land located in Jefferson County, Texas. At trial and on appeal—as clearly set out in her brief—Robbins relies upon a Deed from Ephriam Garonzik to James Meaders ("the Garonzik deed") dated December 14, 1911.

Appellant contends that she is the owner of an undivided one-eighth interest in over forty tracts of land alleged to have been in the estate of William McFaddin, deceased, but only four tracts were particularly described in the Garonzik deed. Appellant contends that certain other deeds and instruments exist in her chain of title and that the remaining thirty-seven tracts of land can obtain descriptions by numerous references to the "land records of Jefferson County, Texas, and the estate of William McFaddin".[1] But the "bargained, sold and conveyed" clause of the Garonzik deed reads:

> [H]ave bargained, sold and conveyed, and by these presents do grant, sell and convey unto the said James Meaders, of the County of Dallas, State of Texas, an undivided one-eighth interest in and to the following described tracts and parcels of land, to-wit:

> Situated in the State of Texas, County of Jefferson, and more fully described as hereinafter set forth, the said property herein conveyed being four (4) tracts, the first of which said tracts is described as follows, to-wit:

Then the deed describes only four tracts. The four tracts were:

> FIRST TRACT: "One labor, first class, Abstract No. 166 ... (old Abstract No. 112)."

> SECOND TRACT: "One Hundred and Sixty (160) acres school lands ... known as Abstract No. 181."

> THIRD TRACT: "Three Hundred and Twenty (320) acres (donation) ... (old abstract No. 119) ... said abstract number being No. 182."

> FOURTH TRACT: "Three Hundred and Twenty (320) acres ... Being Abstract No. 183 ... (old Abstract No. 120)."

The above are condensed forms or abbreviations of the full descriptions in the 1911 deed.

In this litigation the appellant seeks an accounting for unpaid royalties from the real property and mineral interests in which appellant avers that she is entitled to a one-eighth interest.

The appellees are HNG Oil Company, Elf Aquitaine, Inc., IMC Exploration Company, Pogo Producing Company, and Westland Oil Development Corporation. These companies were defendants below.

The deed from Garonzik to James Meaders bore the date of December 14, 1911. Interestingly, the Garonzik deed was filed for record March 21, 1931, at 1:30 o'clock p.m.; this deed was recorded March 26, 1931, in the office of the County Clerk of Jefferson County, Texas. The deed recites that the described four tracts conveyed by the deed is all of the property that J.H. McFaddin, R.D. McFaddin, and A.J. McFaddin inherited through their ancestor, Wm. McFaddin (spelled "McFadden" in the Garonzik deed).

Nevertheless, appellant seeks to expand the deed so that it is construed to include approximately thirty-seven additional tracts of real property comprising the Spindletop Oil Field in Jefferson County. Appellant's claim in this litigation is based upon the Garonzik deed to James Meaders which deed was recorded approximately twenty years after its date. Without doubt, the Spindletop Oil Field had been in existence and in production since the very early part of 1901. The Spindletop Oil Field was the field that brought the oil industry into its significant importance in January of 1901 and it was extensively developed with prolific production before December of 1911.

The companies (hereinafter Defendants) filed summary judgment motions. The defendants received a favorable grant of a summary judgment on several grounds.

■ Robbins presents four points of error. The first point is:

"e". "Meaders" in this cause of action is spelled with an "ers"; again, some actions quoted spell the name "ors".

---

1. For edification, "McFaddin" will be spelled throughout this opinion with an "i", however, some references quoted spell the name with an

The trial court erred in construing the Garonzik deed as conveying solely the four specifically described tracts rather than an interest in all properties inherited by the McFaddin heirs from William McFaddin as expressly stated in the deed.

In this opinion we will endeavor to address appellant's four point of error in order.

Robbins does not contend that the 1911 deed was ambiguous, although she contends that the intention of the 1911 deed should be construed to cover an additional thirty-seven tracts of land. In her written argument in her brief under Point One, Robbins does not aver any ambiguity in what property was conveyed at each step in the Meaders chain of title. In the trial court Robbins made no claim of ambiguity in the 1911 deed.

Jewell Robbins, individually and as attorney-in-fact, filed her response to the first motion for summary judgment of the defendants. The appellant's response to the summary judgment proceedings is lengthy. And in the response the appellant refers in considerable detail to the Garonzik deed. In appellant's response, she makes no contention that the 1911 deed was ambiguous. Thus, the question of ambiguity was not presented in the district court. Although a second response to the defendants' second motion for summary judgment was filed, the second response contained no contention that the 1911 Garonzik deed was ambiguous.

In that posture, then, the construction of the deed became a question of law for the trial court. The responses of appellant were not sworn to, nor did they have proper affidavits attached. Their office was that of a pleading. Generally, pleadings are not proof in summary judgment proceedings.

■ Thus, the 1911 deed's language and wording and its meaning becomes a question of law for the court. *See Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193 (Tex.1962). If a written instrument is so worded that the same can be given a certain and definite legal meaning or interpretation or construction by applying the relevant, pertinent rules of construction, then the written instrument is not ambiguous and parol evidence will not be received to create an ambiguity or to give the written instrument a different meaning from that which its own language and wording imparts. *See Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951).

■ And this rule prevails even to the extent of prohibiting proof of circumstances surrounding the transaction when the written instrument involved is so worded that it is not fairly susceptible to more than one legal meaning or construction. *See Lewis v. East Texas Finance Co.,* 136 Tex. 149, 146 S.W.2d 977 (1941). And importantly and paramountly, no intention, however discovered, can contradict or destroy the legal effect of the wording and language used. *Reynolds v. McMan Oil & Gas Co.,* 11 S.W.2d 778 (Tex. Comm'n App.1928, holding approved). *See and compare Stahl Petroleum Co. v. Phillips Petroleum Co.,* 550 S.W.2d 360 (Tex.Civ. App.—Amarillo 1977), *aff'd,* 569 S.W.2d 480 (Tex.1978). *See and compare Tower Contracting Company v. Flores,* 157 Tex. 297, 302 S.W.2d 396 (1957).

In *Coffee v. Manly,* 166 S.W.2d 377 (Tex. Civ.App.—Eastland 1942, writ ref'd), the unanimous court in an opinion by Justice Funderburk held that a grant unto certain grantees of a perpetual right to use the water on Subdivisions five and six of Sections Nos. 40 and 41 of the T. & P. Railroad Company lands in Jones and Shackelford Counties, Texas, was a specific description and that specific description prevailed over later language used in the instrument of perpetual right to use the water in: "being the same land conveyed to us by Mary A. Manly, on Dec'r. 31st, 1919." In the water rights conveyance, one Bertha Craig and her husband S.A. Craig had joined and they had been the owners of Subdivision four. The suit was by S.S. Manly and Amos Manly, who were the grantees of the perpetual water rights against Aaron Craig Coffee and Kathryn Thigpen, who were owners by inheritance from Mrs. Bertha Craig of Subdivision four.

The court held that where a recitation was made to another deed or another record for the purpose of showing from what source the real property had been derived and as a help in tracing the title, then such a reference or

referral will not and could not operate to enlarge the specific description given in the deed which contained the reference. This principle of law applies to the 1911 Garonzik deed because there was in that deed an adequate and specific, unambiguous description of the four tracts—hence, the reference in the 1911 deed cannot be given the effect of enlarging the specific descriptions to include different, additional tracts of land. This reference only serves to show the source from which the real property has been derived.

It is noteworthy that the writ was refused outright in *Coffee v. Manly*. In *Coffee*, at the district court level the plaintiffs demonstrated by extrinsic evidence that Mary A. Manly had conveyed Subdivision four as well as Subdivisions five and six to the defendant grantors on the date in question, being "on Dec'r. 31st, 1919." And accordingly, the plaintiffs-grantees at trial were awarded water rights on Subdivision Four. On appeal, however, the court not only reversed the judgment but rendered the judgment for the defendants, holding that the deed was unambiguous on its face and that extrinsic evidence could not be admitted to contradict the deed or to create ambiguities. Parol testimony is not admissible. Holding that it was simply not permissible to give controlling effect to that which creates an ambiguity and destroys the certainty which was expressed by other language is the holding in *Cartwright v. Trueblood*, 90 Tex. 535, 39 S.W. 930 (1897).

We hold that the specific descriptions such as those set out in the 1911 Garonzik deed of Abstracts 181, 182, 183, and 166 definitely control over the reference to the source of the interest in the four tracts. We deem that the reasoning and rationale in the *Coffee* case is compellingly persuasive because Bertha Craig, who was the owner of Subdivision four, and her husband, joined in the conveyance of the perpetual water rights. Nevertheless, the grantees only obtained the water rights to Subdivision five and six. Bertha Craig was clearly the owner of Subdivision four. Thus, the Garonzik 1911 deed could have conveyed only the lands in Abstracts Nos. 166, 181, 182, and 183 and in no other tract or abstract.

From the record before us and from the summary judgment proofs as proffered by the defendants as well as Robbins' responses to the motions for summary judgment, we determine that the Fifth Circuit in the Jewell Robbins and Clark cases (as hereinafter discussed) considered, disposed of, and rejected all of the arguments and positions here advanced by Robbins. The Fifth Circuit especially rejected Robbins' arguments and contentions relevant to appellant's point of error number one. Thus, we are constrained to overrule appellant's point of error number one for the reason that the State trial court below properly construed the Garonzik 1911 deed as conveying four, and only four, specifically described tracts. There was no ambiguity in the deed, nor did Jewell Robbins in her various capacities present to the trial court the issue of ambiguity. *See* Tex. R.Civ.P. 166a(c). We have overruled appellant's point of error number one pursuant to Texas precedents. Nevertheless, at least two of the Fifth Circuit decisions are also of controlling effect. *See Robbins v. Amoco Production Co.*, 952 F.2d 901 (5th Cir.1992); *Clark v. Amoco Production Co.*, 908 F.2d 29 (5th Cir.1990). Robbins had also litigated previously in *Robbins v. Chevron U.S.A., Inc.*, 940 F.2d 1529 (1991).

■ Appellant's point of error number two argues that the evidence introduced by appellees in support of their summary judgment was insufficient as a matter of law to support the summary judgment granted by the trial court. As briefed by the appellant, this point of error two deals only with the issue of which properties were conveyed. First, the appellant concedes that the interpretation of real property descriptions is normally a matter exclusively for the court; nevertheless, the appellant further argues that when there is an uncertainty in the description that does not appear on the face of the deed but had its origin in extraneous fact or an ambiguity, then the identity of the land becomes a mixed question of law and fact which must be determined by the jury. We reject this argument. We conclude that the four tracts were not described with uncertainty—nor was the 1911 deed ambiguous. The four tracts of land were identified, as

noted above, in the 1911 deed to Meaders; neither the four tracts nor the deed present a mixed question of fact and law. Appellant's point of error number two insists that the 1911 deed actually encompasses and conveys interest in thirty-seven other tracts of land described as McFaddin property.

The appellant under her point of error number two concedes that the appellees have submitted summary judgment evidence and proof by affidavits demonstrating that no minerals have been produced by any of the appellees from Abstracts 181, 182, 183, and 166. However, appellant takes the position that no evidence was introduced on nonownership and nonproduction as to Pogo Producing Company. This question will be discussed below. In point of error two appellant stresses: "[n]o evidence of any kind has been introduced, by affidavit or otherwise, on any of the other thirty seven tracts of the McFaddin property about the production of minerals by these Appellees." But as noted above, we have construed the Garonzik 1911 deed as being strictly limited to Abstracts 181, 182, 183, and 166. Thus, whether production of minerals by these appellees from any of the other thirty-seven tracts is a non-issue. Appellants have not controverted the evidence and affidavits of the appellees (showing nonownership and nonproduction) being: HNG Oil Company, Elf Aquitaine, Inc., IMC Exploration Company, Westland Oil Development Corporation. Pogo Producing Company is excepted. Our decision on appellant's point of error one definitely governs appellant's point of error two which is hereby overruled.

Appellant's point of error number three argues this:

The trial court erred in relying upon cases with different parties in federal court as preventing full decision on the merits of appellant's cause of action.

We disagree. And equally important is that part of the record before us establishing the defendants' nonproduction in the four abstracts described in the 1911 deed. This summary judgment proof and evidence was proper and supported the summary judgment granted by the trial court. Robbins did not controvert the nonproduction of these four oil companies.

*Some Background Factors Relevant to Appellant's Point of Error Number Three*

Jewell Robbins, individually and as the legal representative and attorney-in-fact for the heirs of James Meaders, has also claimed that the defendants had unlawfully produced oil, gas, and minerals from under the four tracts specifically described for which the plaintiff in her various capacities sought an accounting and damages.

The defendants had joined issue herein by answering with the following pleas of general denial, pleas of not guilty, pleas of the statutes of limitations, *res judicata,* collateral estoppel, and *stare decisis.* Significantly, the defendants by appropriate and proper summary judgment proof and evidence advance the defense that the plaintiff's claim against the defendants for damages fails because the defendants have not owned or produced any oil and gas or other minerals from Abstracts 181, 182, 183, or 166.

There exists an extensive, in depth and detailed affidavit of one Sam O. Smith dated April 9, 1992. In brief summary, Sam Smith had been continuously engaged in the land title and abstract business in Jefferson County Texas, for twenty-two years as president of the Jefferson County Title Company, Inc., and as president of the Jefferson County Abstract Company, Inc., from 1975 through April 1990. The abstract plant involved utilized and contained a geographical indexing of all real estate instruments recorded in Jefferson County from the sovereignty of the soil to the date of the affidavit.

Sam O. Smith was personally familiar with the William McFaddin Labor Abstract No. 166, said Labor containing 177 acres and was patented by the Republic of Texas to William McFaddin on July 24, 1845. Sam Smith searched for any deed, lease, or other type of instrument conveying any interest in No. 166 to the defendants. Smith could not locate any instrument of record in Jefferson County naming any of the entities as grantees and indexed to any of the above described lands. Furthermore, he did not know of any oil and

gas wells located in the William McFaddin Labor Abstract No. 166.

In like manner, Smith could not locate any evidence of any recorded instruments which may have conveyed any interests by deed, lease, or otherwise to Abstracts 181, 182, and 183 to any of the above named entities which might affect the lands lying in any of the Abstracts Nos. 181, 182, and 183. In view of our opinion concerning the 1911 deed, these oil company defendants needed no evidence to support their motions for summary judgment other than the uncontested affidavits of nonownership and nonproduction from Abstracts Nos. 181, 182, 183, and 166. *See Robbins v. Amoco Production Co.*, 952 F.2d 901 (5th Cir.1992); *Clark v. Amoco Production Co.*, 908 F.2d 29 (5th Cir.1990).

By means of amended answers, each one of the defendants pleaded that the final judgments entered in the Federal court litigation in *Robbins v. Amoco Production Co., supra,* and *Clark v. Amoco Production Co., supra,* had binding effect and final effect under several doctrines. In this case, the defensive pleaded doctrines were, inter alia, *res judicata,* collateral estoppel, and *stare decisis.* Each of these doctrines were asserted in defense of this suit at the trial level and, in the defendants' motions for summary judgment, the defendants pleaded and reasserted that the defendants were entitled to summary judgment based on these same, well-established doctrines. Interestingly and importantly, the trial brief of the defendants urged these doctrines and supported and argued the same with applicable authorities for such defenses.

Indeed, the trial court's order granting the motion for summary judgment cited and referred to the federal cases as binding and possessing finality as against the plaintiff in her several capacities by establishing that as a matter of law the Garonzik 1911 deed only conveyed interest in the four tracts that were specifically described as Abstracts Nos. 181, 182, 183, and 166—and nothing more. We have affirmed the action of the trial court in that regard. Further, the trial court determined that the defendants were entitled to summary judgment because of lack of owner-

ship by the plaintiff in the other thirty-seven tracts.

### The Collateral Estoppel Defense

 We determine that the doctrine of collateral estoppel properly applies and is a correct basis for one of the separate, independent grounds for the granting of the motion for summary judgment. We think that the well-established rules of collateral estoppel as applied by the Supreme Court of Texas no longer make mutuality a requirement. Appellant has contended that a lack of mutuality defeats summary judgment. We disagree. In *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714 (Tex.1990), the Supreme Court of Texas in a unanimous opinion written by Justice Cook held:

#### A. No Requirement of Mutuality

In *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361 (Tex.1971), this Court stated,

> The rule [of collateral estoppel] is generally stated as binding a party and those in privity with him. . . . Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy, . . . .

This definition does not require mutuality for the invocation of collateral estoppel; rather, it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *Myrick v. Moody Nat'l Bank,* 590 S.W.2d 766, 769 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Hardy v. Fleming,* 553 S.W.2d 790, 793–93 (Tex.Civ. App.—El Paso 1977, writ ref'd n.r.e.). As this Court stated in *Tarter v. Metropolitan Sav. & Loan Ass'n* [744 S.W.2d 926 (1988) ], "The doctrine applies when the party *against whom* collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit" (emphasis added). [emphasis theirs]

Jewell Robbins is the self-same Jewell Robbins in the same capacities as plaintiff in the prior litigation. In her individual capacity she was the same actual party in the prior litigation. Jewell Robbins in her representa-

tive capacity or in her attorney-in-fact capacity was certainly in privity in the prior litigation. In the prior Federal litigation she sued *for two hundred heirs of James Meaders.* In this State litigation she is suing as the attorney-in-fact *for Abigail Meaders, as the heir of James Meaders.* Therefore, we conclude that Abigail is in privity with the two hundred heirs of the same James Meaders inasmuch as she claims directly under James Meaders; thus, she claims she is an heir of James Meaders. We conclude the trial court was correct in granting the motion on the separate basis of collateral estoppel.

We perceive that there was also an identity of lawyers at crucial times. It is significant and important that in the Federal court suit that Robbins as plaintiff both in the trial court and as appellant in the appeal was represented by the legal professional who has represented Robbins in the case at bar at the time the summary judgment for the defendants was granted. Later this counsel withdrew. It is evident that the same arguments and contentions were made in the Federal court *Robbins* case as were made below in this State court litigation and those same arguments and contentions were overruled in both courts.

Hence, it is accurate to state that the parties here and in the prior Federal case were in privity in that Abigail Meaders is an heir of James Meaders. Also, the identity of the attorneys and the identity of the issues that were presented and determined in the prior Federal court proceeding and in the State trial court were shown as being the same. In the Federal court cases at the Circuit level each involved the issue of the legal interpretation of the 1911 deed, holding that the construction of said deed was a question of law for the court.

Again, in *Eagle Properties, Ltd. v. Scharbauer, supra,* the Texas Supreme Court resolved the question of the application of the doctrine of collateral estoppel in a state court suit, we perceive, based upon a prior federal

court suit and judgment. Our Supreme Court held that collateral estoppel precludes the relitigation of identical issues of fact and precludes the relitigation of identical issues of law. Our Texas Supreme Court held this:

> Under state law, collateral estoppel only precludes the relitigation of identical issues of fact or law which were actually litigated and essential to the prior judgment. *Tarter,* 744 S.W.2d at 927; *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985).

*Id.,* 807 S.W.2d at 721–22. Under this record, we conclude that identical issues of law were actually litigated and were essential to prior decisions and judgments. We hold that the defendants have met and satisfied the elements of collateral estoppel.[2] *See and compare Peregoy v. Amoco Production Co.,* 742 F.Supp. 372 (E.D.Tex.1990), *aff'd,* 929 F.2d 196 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991).

Thus, we conclude and hold that the question of law that was decided in the *Robbins* Federal court case as well as the *Clark* Federal case (which was brought by and on behalf of Meaders' heirs)—which question of law resulted in final judgments in the United States Courts determine that, as a matter of law, the 1911 deed only purported to convey interest in the four specifically described abstracts as numbered above and importantly, that the 1911 deed could not be enlarged so as to include any additional tracts. By like reasoning and rationale, as noted later, we hold that the doctrine of *stare decisis* applies and is binding upon Jewell Robbins, individually and as attorney-in-fact for Abigail. Jewell Robbins, in her several capacities, had a full and fair opportunity to present and litigate her issues in a prior suit. Indeed, she did so. We overrule appellant's point of error number three.

### Fifth Circuit Court of Appeals' Opinion in *Clark v. Amoco Production Co., 908 F.2d 29 (5th Cir.1990)—Clark II*

In *Clark II,* the Circuit Court passed upon and specifically and definitively construed the

---

**2.** The elements of collateral estoppel are:
 (1) the issue at stake being identical to the one involved in the previous litigation;
 (2) the said issue has been actually litigated in the previous litigation; and

 (3) the determination of that issue in the previous litigation had been a critical and necessary part of the judgment in that previous litigation.

1911 Garonzik deed to James Meaders. There, Clark and Profitt, *as administrators of James R. Meadors' estate,* instituted litigation in the Federal District Court of the Eastern District of Texas against four oil companies, alleging that the oil companies had extracted without payment or permission literally billions of dollars worth of oil and gas from the lands in which James Meadors claimed a one-eighth interest. These lands were perceived to include and encompass the famed Spindletop Oil Field[3]. Judge Joe J. Fisher of the District Court granted a summary judgment in favor of the defendant oil companies, concluding that the deed (being the 1911 deed upon which the administrators based their claim) conveyed rights only to four specific tracts of land in which the companies had never held any interest. The suit in the Federal District Court was to establish the Meadors' interest in Jefferson County lands in general and to obtain an accounting of all minerals produced therefrom. Such an accounting, the Meadors heirs and their representatives asserted, would reveal that Meadors' estate was entitled to at least twenty billion dollars in royalties from the oil companies' unauthorized use and production from the various properties for a period exceeding seventy years.

It is clear from the opinion that the basis of the Meadors' estate claim is the 1911 deed from Ephriam Garonzik to Meaders that purported to convey four specifically described tracts of land in Jefferson County, being the same identical deed upon which Jewell Robbins bases her claims. However, in addition, the Garonzik 1911 deed to Meaders stated that those four parcels were all the lands in Jefferson County that the same grantors of the McFaddin family had inherited from their ancestor, William McFaddin, and further, that the intention of the grantors was to convey all of the properties in the thus-defined McFaddin inheritance. In *Clark II,* 908 F.2d at 31, the Fifth Circuit set out in a footnote the exact language, wording and clauses in the 1911 deed and judicially determined that deed's meaning and legal import. We set out in our footnote number three the pertinent portions of the 1911 deed specifically adjudicated and definitely determined by the Fifth Circuit[4]. The Fifth Circuit squarely passed on the clause in the deed that reads: "and this deed is intended to convey to the said James Meaders [sic] one-eights [sic] interest in and to all properties ... that the said ... [McFaddens] are entitled to by inheritance ... of every description whatsoever" is to be construed—according to the plaintiffs (in *Clark II* ) that the 1911 deed was intended to convey a one-eighth interest not only in the four described tracts but also in all of the Jefferson County land inherited through their ancestor Wm. McFaddin by J.H., A.J., and R.D. McFaddin. *But the Fifth Circuit disagreed.* These other, additional lands were determined to have included parts of the Spindletop field. From the Spindletop fields the oil companies had produced billions of dollars worth of oil and gas.

3. The Fifth Circuit in a footnote noted that "[t]he Spindletop Oil Field has been a leading source of oil production since 1901. The discovery of the 'Lucas Gusher' at Spindletop began the East Texas oil boom. Uncounted billions of dollars worth of oil have since been produced in the Spindletop field ... *Clark v. Amoco Production Co.,* [hereinafter referred to as *Clark I* ] 794 F.2d 967, 969 n. 2 (5th Cir.1986)."

4. The pertinent portions of the deed are quoted below:

I, Ephriam Garonzik, of the County of Dallas, State of Texas, for and in consideration of the sum of Ten (10) Dollars and other considerations, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, and by these presents do grant, sell and convey unto the said James Meaders [sic] of the County of Dallas, State of Texas, an undivided one-eighth interest in and to the following described tracts and parcels of land, to-wit: Situated in the State of Texas, County of Jefferson, and more fully described as hereinafter set forth, the said property herein conveyed being four (4) tracts....

[A specific description of the four tracts—Abstracts 166, 181, 182, and 183—follows.]

... [T]he above described property herein conveyed is all the property that the that [sic] J.H. McFadden, R.D. McFadden, and A.J. McFadden inherited through their ancester [sic], Wm. McFadden, and this deed is intended to convey to the said James Meaders [sic] one-eights [sic] interest in and to all properties properties [sic] that the said J.H. McFadden, A.J. McFadden, and R.D. McFadden are entitled to by inheritance through their ancestor, the said Wm. McFadden, of every description whatsoever, situated in the said County of Jefferson.

In *Clark II*, the Fifth Circuit specifically wrote that the trial court correctly held that the 1911 deed unambiguously conveyed an interest *only in four parcels of land.* The circuit court then held that the 1911 deed unambiguously evidenced an intent to convey only the four specifically described tracts. The deed was construed as clearly stating that "the said property herein conveyed being four (4) tracts". Then the deed provides a legal description of these four properties and the deed explains that "the above described property herein conveyed is all the property that the" McFaddins inherited from William McFaddin.

■ It was recognized that the deed redundantly stated that it is intended to convey one-eighth interest in all the lands inherited by the McFaddins from William McFaddin, being a phrase already defined within the instrument as equal to the four described tracts. The issue was then clearly decided that there was no merit to the *Clark II* plaintiffs' contention that the deed is ambiguous on its face and that therefore, extrinsic evidence, that is the inventory of the William McFaddin estate must be admitted in order to remove and resolve the ambiguity. We agree that the 1911 deed is unambiguous and that the deed is forced into a false ambiguity only when extrinsic evidence is introduced to attempt to show something contrary to the express terms of the deed in that the Wm. McFaddin estate contained more than four parcels of land. We determine that such extrinsic evidence is impermissible under the Texas law which has been established to the effect that parol evidence will not be received or admitted to create an ambiguity or to give a contract or a deed a meaning different from that which its language imparts.

### The Opinion in [Jewell] Robbins v. Amoco Production Co., 952 F.2d 901 (5th Cir.1992)

But Jewell Robbins has litigated before. The previous litigation was based directly and squarely on the deed dated December 14, 1911, being the deed from Ephriam Garonzik to James Meaders. Jewell Robbins had alleged that she individually and as attorney-in-fact for some two hundred heirs of James Meaders owned and owns an undivided one-eighth interest in certain lands located in Jefferson County, Texas. The prior Jewell Robbins litigation involved the very same deed determinative of this appeal.

The 1911 deed conveyed an undivided interest in four specifically described tracts of land. These four tracts of land were said to be situated at some distance between three to sixteen miles from the Spindletop dome. In the prior litigation involving the same 1911 deed, Robbins relied upon certain language, claiming that the deed included also thirty-seven additional tracts which did include the land upon which the Spindletop dome is situated. Robbins in the prior suit contended that various oil companies had extracted oil and gas and other minerals from the land described in the 1911 deed without compensating Meaders or his heirs.

The United States District Court for the Eastern District of Texas, Judge Joe J. Fisher, held that the crucial 1911 Garonzik deed conveyed only the four specifically referenced and described tracts. The prior Jewell Robbins litigation specifically dealt with the interpretation of the Garonzik deed of 1911 which set forth specific descriptions of four tracts of land designated as Abstracts 166, 181, 182, and 183. The relevant, governing, operative language of the deed is set out verbatim in *Robbins v. Amoco, supra,* at 903[5]. Again, the Fifth Circuit dealt with and construed the exact same clauses in the 1911 deed upon which the same Jewell Robbins now relies upon to expand the said deed to include thirty-seven additional (or more) tracts of land.

Robbins has previously specifically argued and maintained that the McFaddins had

5. Quoting from *Robbins:*
 [T]he above described property herein conveyed is all the property that ... J.H. McFadden, R.D. McFadden, and A.J. McFadden inherited through their ancester [sic], Wm. McFadden, and this deed is intended to convey to the said James Meaders one-eights [sic] interest in and to all properties ... that the said J.H. McFadden, A.J. McFadden, and R.D. McFadden are entitled to by inheritance through their ancestor, the said Wm. McFadden, of every description whatsoever, situated in the said County of Jefferson.

owned more than forty different parcels of real property in Jefferson County at the time of the 1911 conveyance. And Robbins has previously specifically asserted that the language must be construed to convey not just the four specifically described parcels or tracts, but all of the tracts owned by the McFaddins in Jefferson County. The circuit court overruled Robbins' construction of the 1911 deed specifically; as we do now. Put in simplest terms, Jewell Robbins' attempt to expand the deed beyond the four referenced tracts has failed in the past in at least two squarely decided, "White Horse" cases and must fail now. The Fifth Circuit has, at least on two prior occasions in two published opinions, squarely made the holding—an actual holding—that the 1911 deed was not ambiguous and thus, extrinsic evidence had to be refused. That court necessarily based its interpretation and construction of the deed upon the contractual language. The Federal appeals court specifically held that inasmuch as the interpretation of the unambiguous terms of a contract is purely a question of law, the interpretation is one for the court. *See Browning v. Navarro,* 743 F.2d 1069, 1080 (5th Cir.1984).

### The Stare Decisis Defense

■ We decide that once a definitive construction has been given to a specific writing or a particular specified fact situation such as the determination of the true construction of a will or the validity of a deed, such a definite determination is binding and conclusive in subsequent suits involving the same subject matter and the self-same deed whether the parties and the property are the same or not. The doctrine of *stare decisis* controls the result. And Robbins loses. *See Case–Pomeroy Oil Corporation v. Pure Oil Company,* 279 S.W.2d 886 (Tex.Civ.App.—Waco 1955, writ ref'd).

■ Furthermore, lacking any subsequent disapproval by the proper state court, the Federal interpretation and construction still applies with equal force to cases such as the one before us. Jewell Robbins is not in a position to demonstrate or maintain how the quantity or quality of extraneous evidence would explode the prohibition against considering such evidence when the 1911 deed has been pronounced unambiguous on a number of occasions, one of which involved Jewell Robbins. Robbins in State court has certainly not demonstrated why *Robbins v. Amoco, supra,* in Federal Fifth Circuit Court should not govern this appeal. Thus, we necessarily hold that the 1911 deed conveyed, at the very most, an interest in the four parcels of land (if it did so convey) specifically described in the 1911 deed and nothing more. The doctrine of *stare decisis* gives force of law to precedents and is broader in its scope than the doctrine of collateral estoppel. Commonality or privity among the parties to the present or prior litigation is not required by *stare decisis*. In suits involving claims to title to land, *stare decisis* is particularly applicable. This is true because of the importance of establishing stability of land titles, sales, and transactions. When a reviewing court with jurisdiction sets forth a final ruling on a matter of law before that appellate court, then such ruling and determination is binding and conclusive in all subsequent suits involving the same subject matter, whether the parties and the property are the same or not. *Sturgeon v. Strachan Shipping Co.,* 698 F.2d 798 (5th Cir.1983); *Case–Pomeroy Oil Corporation v. Pure Oil Company, supra.*

### The Doctrine of Issue Preclusion; a/k/a Preclusion by Judgment

■ Additionally and as an independent ground of defense, we hold that the district court ruling below was correct based on the doctrine of issue preclusion. We hold that the questions below and the questions before us on appeal definitely involve the doctrine of issue preclusion, also known as preclusion by judgment. This doctrine is clearly implicated by reason of the prior federal judgments construing and determining the exact effect of the Garonzik 1911 deed. Issue preclusion, or preclusion by judgment, bars the relitigation of identical questions of fact or law that were actually litigated and which questions of fact or of law were essential to the judgment in the prior suits. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381 (Tex.1985); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980).

Indeed, our Texas Supreme Court has cited section 87 of the RESTATEMENT (SECOND) OF JUDGMENTS, and our highest civil court has determined where the earlier judgment was rendered in a federal court, that intermediate State appellate courts are to follow the federal decisions based on issue preclusion. *See Jeanes v. Henderson,* 688 S.W.2d 100, 103 (1985). *See Acker v. City of Huntsville,* 787 S.W.2d 79 (Tex.App.—Houston [14th Dist.] 1990, no writ). Therefore, under the doctrine of issue preclusion in view of the identity of the party-plaintiff, being Jewell Robbins in her various capacities, with the identity of the attorneys and the identity of the questions of law presented, we hold that the federal decisions and determinations in *Robbins* and *Clark, supra,* are definitely binding upon the plaintiff here and upon the State courts under the doctrine of issue preclusion. We hold in this case that it is correct to give effect to the holdings, judgments, and opinions of the Fifth Circuit Court.

■ Although it may be redundant and somewhat overlapping, we hold that the trial court correctly ruled that the plaintiff's chain of title as to Abstracts 181, 182, and 183 failed because the inventory of William McFaddin's estate did not list such Abstracts as being assets of the said estate. We conclude that the plaintiff has failed to establish a complete, correct chain of title to any of the four tracts conveyed in the 1911 deed with the exception of Abstract 166. Abstract 166 was listed in the proper inventory. Robbins is in a position of being obliged to rely upon a certain March 9, 1898, agreement. This 1898 agreement is in essence a lease which contains what might be described as a five-year primary term. The agreement is between certain McFaddins and one Anthony Lucas. The 1898 agreement is limited to a one-fourth undivided interest in the tracts or parcels of land that are referenced in the William McFaddin estate. It is undisputed that the inventory of the William McFaddin estate simply fails to list Abstracts Nos. 181, 182, and 183. Thus, the plaintiff's chain of titles as to these three abstracts fails.

The defendants, however, never owned any interest or produced any minerals from the Abstract No. 166. · The plaintiff, of course, must establish her own title and the plaintiff can prevail only on the strength of her own title. *Hunt v. Heaton,* 643 S.W.2d 677, 679 (Tex.1982); *Land v. Turner,* 377 S.W.2d 181, 183 (Tex.1964). In order to succeed, a plaintiff must establish a superior title in himself or herself by an affirmative showing. *See and compare Gillum v. Temple,* 546 S.W.2d 361, 363 (Tex.Civ.App.—Corpus Christi 1946, writ ref'd n.r.e.). The correct concept of the term "chain of title" under Texas law has been defined as "[t]he successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder." *See Reserve Petroleum Co. v. Hutcheson,* 254 S.W.2d 802, 806 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.).

Under this record we hold that the 1898 agreement to Lucas which failed to mention or describe any specific property, but only referred to the William McFaddin estate was insufficient and inadequate to establish a complete chain of title as to the three abstracts, 181, 182, and 183. Pursuant to this holding, the trial court's summary judgment denying the plaintiff's claim was properly granted on this additional basis—that basis being the plaintiff's failure to establish a complete and proper chain of title to the three abstracts 181, 182, and 183.

*Appellant's Point of Error Number Four*

But, the appellant contends that under her point of error number four that Wm. McFaddin in certain instances was prohibited from alienating any property during his lifetime because of the prohibition against alienation in the Donation Patent. This contention was not raised or presented to the trial court at the proper time when the motion for summary judgment was presented, considered, and granted. Therefore, it is clearly not before this Court of Appeals for consideration. In order for an appellant to preserve a complaint for appellate review, that appellant must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling he desired the court to make and it is also necessary for the appellant to have obtained a ruling from

363

the trial court upon his contention or his issue. Tex.R.App.P. 52(a). Rule 52(a) is harmonious and consistent with Rule 166a(c) of the Texas Rules of Civil Procedure, especially pertaining to summary judgment proceedings. Rule 166a(c) states:

Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.

■ But it is Hornbook law and an axiomatic rule that restraints on alienation are squarely contrary to public policy and are forbidden and disallowed. *See* Article I, § 26 of the 1876 Constitution, as amended. In 34 Tex.Jur.3d *Estates* § 61 (1984) it is written:

Alienability is a legal incident of property and restraints against it are contrary to public policy unless imposed under an active trust. Accordingly, a provision that annexes to a grant or devise a general restraint on the grantee's or devisee's power to convey or transfer the property is invalid. Thus, a condition against alienation during the lifetime of the grantee, contained in a deed purporting to convey an absolute fee simple estate, has been *held to be void* on the ground either that it is repugnant to the estate granted, or, admitting that such a restriction may be imposed for a reasonable time, that *it restricts alienation for an unreasonable time.* (emphasis added)

*See O'Connor v. Thetford,* 174 S.W. 680 (Tex. Civ.App.—San Antonio, 1915, writ ref'd).

### Pogo Producing Company and Abstract No. 166

■ The affidavit of Sam O. Smith has been reviewed and analyzed a second time. We determine that Abstract No. 166 principally exists in the northern and western parts of the City of Beaumont and is therefore removed a considerable distance from the Spindletop Oil Field. The summary judgment proof plainly shows that the Averill Addition, the First McFaddin Addition, and the Second McFaddin Addition (when dedicated) were parts of Beaumont as the City then existed. These additions are located in Abstract No. 166. Furthermore, the proof establishes that no oil or gas wells, according to the affiant, have existed or did exist in Abstract No. 166. This affidavit is similar to the evidence of nonproduction passed on and approved of in *Clark II.* Appellant does not controvert these matters. In *McConnell v. Southside School Dist.,* 858 S.W.2d 337 (Tex. 1993), our Supreme Court wrote:

Likewise, issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979) ("the non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement ...").

Thus, Pogo as well as the other four defendants were entitled to a summary judgment. No damages were shown by plaintiff; no grounds for an accounting were shown by plaintiff; no extraction of oil, gas, or other minerals by these defendants were shown by plaintiff. The trial court's judgment is affirmed.

AFFIRMED.